# United States Court of Appeals
## For the First Circuit

No. 09-1100

UNITED STATES OF AMERICA,

Appellee,

v.

BERNARDO HERNÁNDEZ-FERRER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Selya and Lipez, Circuit Judges.

Thomas J. Trebilcock-Horan, with whom Joseph C. Laws, Jr., Federal Public Defender, and Patricia A. Garrity, Assistant Federal Public Defender, were on brief, for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney (Appellate Chief), were on brief, for appellee.

March 19, 2010

**SELYA**, **Circuit Judge**. This appeal poses a question of first impression in this circuit: Does a district court have authority to revoke a term of supervised release based on conduct occurring after the scheduled expiration date of the term, where the offender has absconded prior to the expiration date and is not apprehended until some time after committing the alleged violation? Concluding, as we do, that there can be no tolling of the period of supervised release on the basis of fugitive status, we answer this question in the negative. Consequently, we vacate the judgment below and, in the bargain, part company with the only other court of appeals to have addressed this question.

## I. BACKGROUND

The facts are straightforward. In 2000, a federal grand jury sitting in the District of Puerto Rico indicted defendant-appellant Bernardo Hernández-Ferrer. Early the next year, the appellant pleaded guilty to a charge of conspiracy to distribute narcotics. See 21 U.S.C. §§ 841(a)(1), 846. On May 25, 2001, the district court sentenced him to thirty-three months in prison, to be followed by a three-year term of supervised release.

The appellant served his prison sentence and began serving his supervised release term on January 10, 2003. Thus, the term was set to expire on January 10, 2006.[1]

_____

[1] In the district court, the appellant asserted that the scheduled expiration date was January 9, 2006. In his appellate brief, he suggests that January 10, not January 9, would under

-2-

On September 26, 2005, the probation department, by motion, notified the district court that the appellant had committed Grade C violations of the conditions of his supervised release, USSG §7B1.1(a)(3), during and after the summer of 2005. The probation department requested the issuance of both an arrest warrant and an order to show cause why the appellant's supervised release should not be revoked. The motion explained that the appellant had not submitted his monthly supervision reports for a number of months; that he had failed to appear for three scheduled office appointments; and that he had neglected to notify the probation department of changes in his employment and residence. The motion papers added that the appellant's whereabouts were unknown.

The district court issued an order to show cause on September 29, 2005, and an arrest warrant some two weeks thereafter. A show-cause hearing was scheduled but then cancelled because the arrest warrant had not been served.

On January 11, 2006, one day after the nominal expiration date of the appellant's supervised release term, Puerto Rico police officers caught the appellant distributing heroin and arrested him for that conduct. He subsequently entered a guilty plea to the new

ordinary circumstances have been the last day of the term. Because this one-day discrepancy makes no difference to the outcome here, we assume an expiration date of January 10.

charges in a local court.  On May 23, 2006, that court sentenced him to five years' imprisonment.

Meanwhile, the dormant federal proceeding returned to life.  On May 4, 2006, the probation department filed a supplemental motion informing the district court of the appellant's January 11, 2006, drug crime, which constituted a Grade A violation of his supervised release conditions.  See id. §7B1.1(a)(1); see also 18 U.S.C. § 3583(d) (mandating, as a condition of supervised release, that the offender not commit a crime during the term of supervision).  The appellant responded on January 26, 2007.  After some procedural skirmishing (including the denial of the appellant's motion to dismiss for want of jurisdiction), the court convened a final revocation hearing.

At the hearing, the appellant acknowledged that the court had jurisdiction to consider revoking his supervised release based on the Grade C violations described in the probation department's original motion but maintained that the court lacked similar authority with respect to the alleged Grade A violation because the latter had occurred after the expiration of his supervised release term.  He also asked the court to reconsider its denial of his earlier motion to dismiss that charge.

The court denied the motion for reconsideration, holding that the probation department's original motion and the arrest warrant issued pursuant thereto had "interrupted" the term of

supervised release, such that the term was "still alive" when the appellant committed the alleged Grade A violation. The court then revoked the appellant's supervised release; calculated an advisory sentencing range based on the more serious Grade A violation, see USSG §7B1.1(b); and imposed a within-the-range sentence of twenty-one months in prison. This timely appeal ensued.

## II. ANALYSIS

Whether a district court has authority to revoke a term of supervised release is a question of law and, thus, engenders de novo review. United States v. Goins, 516 F.3d 416, 419 (6th Cir. 2008). We proceed accordingly.

### A. The Legal Landscape.

The touchstone of our inquiry is 18 U.S.C. § 3583. Pursuant to that statute, a district court may revoke an offender's supervised release and order him to serve additional jail time upon a finding that the offender has violated one or more conditions of his supervised release. See id. § 3583(e)(3). At times, the revocation hearing may not be held until after the scheduled expiration of the supervised release term. In those instances, the district court's authority is governed by a specific delayed-revocation provision, which states in pertinent part:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment . . . extends beyond the expiration of the term of supervised release for any period

-5-

reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

Id. § 3583(i).

Once a court revokes an offender's supervised release, it must sentence the violator. To aid in this endeavor, the United States Sentencing Commission has promulgated a table of recommended sentencing ranges. See USSG §7B1.4. These ranges and the other policy statements contained in Chapter 7 of the Guidelines Manual are advisory.[2] In the last analysis, the district courts, subject to the usual preconditions of reasonableness and the like, have broad discretion to impose sentences within the statutory limits limned in 18 U.S.C. § 3583(e)(3). See United States v. Jackson, 549 F.3d 1115, 1116 n.2 (7th Cir. 2008).

## B. **Plain Language**.

In the case at hand, the appellant concedes that the district court had authority to revoke his supervised release based on the Grade C violations that occurred in 2005. But the district court did not hinge the revocation and sentence on those violations alone; rather, it acted upon the later-occurring Grade A violation. Seizing upon this choice, the appellant argues that the court did

---

[2] These ranges and other policy statements were explicitly denominated as advisory even before the Supreme Court's landmark decision in United States v. Booker, 543 U.S. 220, 259 (2005). See United States v. Work, 409 F.3d 484, 492 (1st Cir. 2005).

not have authority to revoke his supervised release on that basis because the underlying conduct — the local drug crime — occurred after the expiration of his supervised release term. In his view, jurisdiction under the delayed-revocation provision is restricted to violations for which, before the expiration of a term, a summons or warrant has issued. The government demurs.

In the end, this dispute boils down to a matter of statutory construction. Consequently, we must start with the text of the relevant statute. See Kholi v. Wall, 582 F.3d 147, 152 (1st Cir. 2009). By its plain language, section 3583(i) extends the district court's jurisdiction beyond the stated expiration of a term of supervised release. But that extension operates only in a particular set of circumstances: "for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued." Here, however, the local drug crime (the gravamen of the alleged Grade A violation) took place after the appellant's supervised release term had expired. Thus, it does not come within the plain language of the statute.

The district court apparently thought that the earlier issuance of a warrant for other violations occurring before the expiration of the supervised release term paved the way for jurisdiction over the Grade A violation. This proposition is untenable. Cf. United States v. Naranjo, 259 F.3d 379, 383 (5th Cir. 2001) (holding that section 3583(i) permits revocation based

-7-

on any violation "committed during [the] supervised-release-term," even if contained in a petition for revocation filed after expiration of the term, as long as a warrant or summons has issued during that term on the basis of another violation (emphasis in original)). There is simply no jurisprudential foundation for the idea that a timely warrant for one violation operates to preserve jurisdiction for later violations occurring after the expiration of the supervised release term. That is not the law.

## C. **Availability of Tolling**.

In an effort to snatch victory from the jaws of defeat, the government urges us to hold that a term of supervised release is tolled during any period in which an offender has absconded from supervision. Specifically, it contends that the appellant became a fugitive when he failed in the summer of 2005 to keep the probation department apprised of his whereabouts and, thus, the running of his term of supervised release was tolled during the period that he was missing; that is, until his arrest by Puerto Rico police officers on January 11, 2006. From that point forward, the government adds, his term of supervised release was tolled under 18 U.S.C. § 3624(e) due to his imprisonment for the new crime. Hence, the supervised release term had not expired either when the appellant committed the new drug crime or when the probation department filed the supplemental motion in which it notified the district court of that crime.

-8-

The government is correct that imprisonment lasting for at least thirty days, in connection with a different offense, tolls the running of a supervised release term. 18 U.S.C. § 3624(e). In this instance, however, the appellant was not detained for the new crime until after the scheduled expiration date of his supervised release term had come and gone. Thus, the question reduces to whether his fugitive status prior to his commission of that crime tolled the term of supervised release beforehand (such that his term did not expire as scheduled on January 10, 2006). It is to this question that we now turn.

The only court of appeals to have addressed this question — the Ninth Circuit — has found merit in the government's position. See United States v. Delamora, 451 F.3d 977, 978 (9th Cir. 2006); United States v. Murquia-Oliveros, 421 F.3d 951, 952 (9th Cir. 2005); United States v. Crane, 979 F.2d 687, 691 (9th Cir. 1992). We are not so sanguine.

Assuming, without deciding, that the appellant was a fugitive,[3] we nonetheless reject the government's asseveration that an offender's fugitive status tolls the running of a term of supervised release. We explain our reasoning below.

---

[3] It is not clear whether the appellant can be said to have been a fugitive. See, e.g., Murquia-Oliveros, 421 F.3d at 953-54 (defining "fugitive" for this purpose as one who "abscond[s] from serving the terms of [] supervised release" by "depart[ing] the place [in which the offender] was authorized by the terms of his release to be," and "fail[ing] to contact his probation officer as required").

-9-

To begin, the statutory provisions touching upon supervised release neither expressly require nor expressly permit tolling during the interval when an offender is in fugitive status. The only tolling provision that Congress saw fit to enact is contained in 18 U.S.C. § 3624(e), which tolls the running of a term of supervised release during any period in which an offender is imprisoned for thirty days or more in connection with a different crime. The absence of an express tolling provision for fugitive status, coupled with the presence of an express tolling provision that encompasses other circumstances, is highly significant. See Russello v. United States, 464 U.S. 16, 23 (1983); Trenkler v. United States, 268 F.3d 16, 23 (1st Cir. 2001). The maxim "expressio unius est exclusio alterius" — which translates roughly as "the expression of one thing is the exclusion of other things" — is a venerable canon of statutory construction, see, e.g., United States v. Reccko, 151 F.3d 29, 34 (1st Cir. 1998), and that maxim is directly applicable here.

We find additional guidance in the case law. Although no other court of appeals has passed upon the Ninth Circuit's use of fugitive status as a trigger for tolling in supervised release cases, several courts of appeals have addressed an analogous question involving deported offenders. These courts, citing the expressio unius maxim, have ruled that the pertinent statutes do not authorize tolling a term of supervised release during the

-10-

period in which an offender is absent by reason of his deportation.
See, e.g., United States v. Cole, 567 F.3d 110, 114-15 (3d Cir.
2009); United States v. Ossa-Gallegos, 491 F.3d 537, 543 (6th Cir.
2007) (en banc); United States v. Okoko, 365 F.3d 962, 967 (11th
Cir. 2004); United States v. Juan-Manuel, 222 F.3d 480, 487-88 (8th
Cir. 2000); United States v. Balogun, 146 F.3d 141, 146-47 (2d Cir.
1998). We think that when Congress explicitly allows for tolling
in a particular circumstance, there is a strong presumption that
Congress did not intend to allow tolling in other circumstances.
Here, the government has pointed to nothing that would suffice to
rebut this strong presumption. We conclude, therefore, that the
fact that Congress provided for tolling a period of supervised
release only when an offender is imprisoned for a different crime[4]
is a decisive argument for the proposition that Congress did not
intend to toll a period of supervised release for any other reason
(including an offender's fugitive status). If Congress had wanted
to authorize tolling when an offender absconds from supervision, we
believe that it would have said so.

---

[4] We note that the Eleventh Circuit reads section 3583(i) as
an additional tolling provision. See Okoko, 365 F.3d at 964-65.
This runs counter to the clear weight of authority, which holds
that, unlike section 3624(e), section 3583(i) is not a tolling
provision "because tolling requires an actual suspension of the
running of the period of supervised release, and under § 3583(i)
there is no suspension, but rather an extension of the period
during which the government may pursue violations of supervised
release." Ossa-Gallegos, 491 F.3d at 543 n.5; accord Cole, 567
F.3d at 114 n.3; United States v. Jordan, 572 F.3d 446, 448 (8th
Cir. 2009). We therefore reject the Eleventh Circuit's view.

Early case law, which provided for tolling in the probationary context, offers little support for the government's position. Those cases allowed tolling of a term of probation while an offender was not actually under probationary supervision because he had either absconded or gone to prison for another offense. See, e.g., United States v. Fisher, 895 F.2d 208, 212 (5th Cir. 1990); United States v. Martin, 786 F.2d 974, 975 (10th Cir. 1986); Nicholas v. United States, 527 F.2d 1160, 1162 (9th Cir. 1976). But these cases are distinguishable by reason of the passage of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, tit. II, ch. II, 98 Stat. 1987 (effective Nov. 1, 1987), which eliminated parole and some forms of probation in favor of a new supervised release regime. In establishing the modified probation paradigm, Congress codified prior case law that provided for tolling when a probationer was imprisoned for another offense, see 18 U.S.C. § 3564(b); see also S. Rep. No. 98-225, at 100-01 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3283-84, but made no similar reincorporation of prior case law providing for tolling during periods when offenders were in fugitive status. Congress followed precisely the same pattern in the new supervised release regime, allowing tolling for imprisonment but eschewing it for fugitive status. See 18 U.S.C. § 3624(e). In light of the preexisting case law, the only rational conclusion that we can draw from this selective codification of prior case law is that Congress intended

a term of supervised release to be tolled only by reason of immurement.

The government's final argument traces its origins to the Ninth Circuit. That court has warned that if fugitive status does not toll the running of a term of supervised release, that lack of tolling "would reward those who flee from bench warrants and maintain their fugitive status until the expiration of their original term of supervised release." Murguia-Oliveros, 421 F.3d at 953 (quoting Crane, 979 F.2d at 691). This warning cannot withstand scrutiny.

If an offender absconds before the expiration of his supervised release term, he will not do so with impunity. After all, the statute allows for the passage of a period of time, following the expiration of a term of supervised release, which is "reasonably necessary" to adjudicate matters arising before expiration. 18 U.S.C. § 3583(i). This period would include the time that the offender, by his own contrivance, cannot be haled into court. Thus, as long as a warrant or summons issues before the expiration of the term, an offender who remains a fugitive will still be subject to the court's jurisdiction once located, and his conduct while a fugitive will be considered at sentencing. See infra Part II(D). It follows that a judicially contrived tolling mechanism is not necessary to deter offenders from absconding.

### D.  **Further Proceedings**.

Our holding that the district court lacked authority to revoke the appellant's supervised release based on the alleged Grade A violation does not end our odyssey.  The record makes manifest that the district court still retained authority to revoke the appellant's supervised release on account of the earlier Grade C violations.  Given this circumstance, remand is appropriate to allow the district court to decide whether to revoke the appellant's supervised release based solely on the Grade C violations and, if so, to impose a condign sentence.[5]

Let us be perfectly clear.  The fact that the January 11, 2006, drug crime cannot itself be deemed a supervised release violation does not mean that it is immaterial for present purposes. When a district court revokes a term of supervised release, the sentencing court must consider certain enumerated factors in imposing a sentence.  See 18 U.S.C. § 3583(e).  We think that, in mulling these factors, the court may take into account an offender's conduct between the time of the violation underlying the revocation and the time of sentencing.  See United States v. Kreitinger, 576 F.3d 500, 504-05 (8th Cir. 2009); cf. USSG §7B1.4, comment. (n.2) (explaining that "an upward departure [from the

---

[5] Remand is especially desirable in this case because the district court calculated the advisory sentencing range based on the Grade A violation and imposed a sentence at the high end of that range.

applicable range of imprisonment in the Revocation Table] may be warranted when a defendant, subsequent to the federal sentence resulting in supervision, has been sentenced for an offense that is not the basis of the violation proceeding"). Crimes committed by an offender between the occurrence of a supervised release violation and sentencing for that violation are relevant in weighing the need for deterrence — a key consideration mandated by section 3583(e). See United States v. Simtob, 485 F.3d 1058, 1062 (9th Cir. 2007) ("The history of the violator, when combined with the violator's most recent criminal offenses, and particularly when similar to the past transgressions, is indicative of the violator's propensity for recidivism and inability to integrate peacefully into a community.").

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we reject the government's view that a supervised release term is tolled while an offender is in fugitive status. Consequently, the appellant's supervised release term expired on January 10, 2006. Because the alleged Grade A violation did not arise until after that date, the district court lacked authority to revoke the appellant's supervised release on that basis. Hence, we vacate the judgment and remand the case to the district court for further proceedings consistent with this opinion.

    <u>**Vacated and remanded**</u>.