**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3280
_____

SORAYA DIASE COFFELT;
JOHN M. CANEGATA;
RONALD CHARLES,

Appellants

v.

CAROLINE F. FAWKES;
GOVERNMENT OF THE VIRGIN ISLANDS
_____

On Appeal from the District Court
for the District of the Virgin Islands
(D.V.I. Civil No. 1-14-cv-00025)
District Judge: Honorable Wilma A. Lewis
_____

Argued August 1, 2014
_____

Before: FISHER, VANASKIE, and SHWARTZ, *Circuit
Judges*

(Opinion Filed: August 26, 2014)

Andrew C. Simpson, Esq. [ARGUED]
Andrew C. Simpson Law Offices
2191 Church Street, Suite 5
Christiansted, VI 00820
        *Counsel for Appellants*

Kimberly L. Salisbury, Esq. [ARGUED]
Carol L. Thomas-Jacobs, Esq.
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
St. Thomas, VI 00802
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge.*

In May of this year, Caroline F. Fawkes, the Virgin Islands Supervisor of Elections, disqualified Appellants Soraya Diase Coffelt and John M. Canegata from appearing on the general election ballot for the offices of Governor and Lieutenant Governor, respectively, of the Virgin Islands, for ostensible noncompliance with the Virgin Islands Election Code. Coffelt and Canegata, arguing that Fawkes misapplied the Election Code, brought this action to obtain a permanent injunction that would allow them to appear on the November general election ballot. In the alternative, they argued that Fawkes's interpretation of the Code, if correct, violates the

2

First Amendment, and sought injunctive relief on that ground as well. The District Court initially agreed with Coffelt and Canegata's reading of the Election Code and granted a temporary restraining order. Following additional briefing and oral argument, however, the District Court denied a permanent injunction and dismissed the lawsuit. In an order filed August 1, 2014, we granted Appellants' motion for an injunction pending appeal and stated that an opinion would follow. Because we now conclude that Coffelt and Canegata's candidacy is not barred under 18 V.I.C. § 342a, we will vacate the District Court's order of July 7, 2014 and remand for further proceedings.

I.

Candidates for Governor and Lieutenant Governor of the Virgin Islands must run as an inseparable pair on a single ticket. 48 U.S.C. § 1591. Under the Election Code, which was overhauled in 1963 and modeled in large part on Pennsylvania's election law, 25 Pa. Stat. Ann. §§ 2600–3591, a candidate seeking public office has two options to appear on the general election ballot.

Subchapter I of Chapter 17 describes the traditional party-nomination process, under which a candidate submits a "nomination petition," competes in the party's primary election, and, if successful, appears on the general election ballot as that party's official candidate. *See* 18 V.I.C. §§ 341–359. In 2005, the Virgin Islands Legislature added 18 V.I.C. § 342a to Subchapter I, which provides:

> Any person running for public office must run as a candidate consistent with the political party

3

designation under which the candidate is registered at the time of the filing of the nomination petition, whether the political party designation indicates an affiliation with a political party as defined in section 301 or otherwise.

*Id.* § 342a.

Subchapter II, by contrast, details a "direct nomination" path to the general election ballot for candidates lacking the imprimatur of a recognized political party. *See id.* §§ 381–385.[1] Such candidates declare their interest with submission of a "nomination paper," which must have a certain number of signatures from qualified electors. *Id.* § 381. If such a candidate represents a "political body," the

---

[1] The term "direct nomination" is used by the parties but does not appear in the Election Code itself. The existence of this alternative path to the general election ballot is consistent with the Supreme Court's recognition that "although the citizens of a State are free to associate with one of the two major political parties, to participate in the nomination of their chosen party's candidates for public office and then to cast their ballots in the general election, the State must also provide feasible means for other political parties and other candidates to appear on the general election ballot." *Storer v. Brown*, 415 U.S. 724, 728 (1974) (citing *Williams v. Rhodes*, 393 U.S. 23 (1968)).

candidate must specify the name of that body. *Id.* § 384(a).[2] The political body's name may not be "identical with, or deceptively similar to" the name of any political party or competing political body. *Id.* § 384(b). If the candidate does not specify a political body, "the candidate shall . . . be designated as 'Independent'" on the general election ballot. *Id.* § 384(c).

In early 2014, Coffelt, who is not registered with any political party,[3] sought a running mate in connection with a "direct nomination" bid for Governor of the Virgin Islands. Canegata, a registered Republican (and in fact the sitting Chair of the Virgin Islands Republican Party), expressed interest in being Coffelt's running mate. Notably, the Republican Party opted not to advance a party-sponsored ticket in the November 2014 gubernatorial election, thus leaving Canegata with no opportunity to pursue a traditional "Subchapter I" bid for that office as a Republican.

---

[2] A "political body" is a "political group which is not a political party but which has nominated candidates for at least two public offices by nomination papers under subchapter II of chapter 17 . . . ." 18 V.I.C. § 301(b). Neither party contends that this case involves any political bodies.

[3] The Election Code gives no formal designation to electors who are not associated with a particular party, although terms appearing in the record for such electors include "no-party," "unaffiliated," or "Independent." (*See, e.g.*, App. 379–83.)

5

On May 23, 2014, Coffelt filed a nomination paper with the Office of Supervisor of Elections, signaling her intent to run for Governor with Canegata as her running mate. On May 27, 2014, Canegata filed a nomination paper to run as Lieutenant Governor on the same ticket as Coffelt.[4] The same day of their respective filings, Coffelt and Canegata each received, by email, a "Notice of Defect" from Fawkes in her capacity as Supervisor of Elections. The Notice of Defect addressed to Coffelt states, in pertinent part:

> Pursuant to Title 18 Section 411 you are hereby notified that your nomination petition/paper was found to be defective. The reason for the defect:
>
> Pursuant to VIC Title 18, Chapter 17, § 342a – Prohibition against persons registered to a political party running as a no-party or independent candidate.
>
> The required running mate must be of like Independent Party in order to be an eligible candidate for Governor – VIC 18 Section [342a].

(App. 79 (emphasis and all caps omitted).)

---

[4] Appellant Ronald Charles is an elector who signed Canegata's nomination paper.

6

The Notice of Defect addressed to Canegata states, in pertinent part:

> Pursuant to Title 18 Section 411 you are hereby notified that your nomination petition/paper was found to be defective. The reason for the defect:
>
> As a registered member of the Republican Party you have filed a nomination paper as a Lieutenant Governor candidate with a no party candidate which is impermissible under the law.

(App. 78 (emphasis and all caps omitted).)

On May 30, 2014, Appellants filed the instant action in the District Court for the Virgin Islands, seeking to enjoin Appellees from disqualifying Coffelt and Canegata from the November ballot. They also sought a declaratory judgment that the pair had met the requirements of 18 V.I.C. § 381 for placement on the general election ballot under Subchapter II. Alternatively, they requested a declaration under the remedial provisions of 42 U.S.C. § 1983 that 18 V.I.C. § 342a, if correctly interpreted by Fawkes, violated their rights under the Revised Organic Act, 48 U.S.C. § 1561, and the federal Constitution.

Together with the complaint, Appellants filed a motion for a temporary restraining order and preliminary injunction. On June 3, the District Court heard oral argument on the motion. On June 6, the Court entered a 14-day temporary

restraining order, noting that § 342a, by its own terms, applies only to candidates who file a nominating *petition*—i.e., the document associated with a bid for office under Subchapter I—and not to candidates who file a nominating *paper* under Subchapter II, such as Coffelt and Canegata. (App. 58.) The Court thus concluded that "the agency's interpretation of the law is not supported by the plain language of the applicable statutory provisions." (*Id.*)

The parties submitted additional briefing on the motion for a permanent injunction, and the Court held oral argument on June 27, 2014. On July 7, 2014, the District Court entered a memorandum and order reversing course. The Court vacated the temporary restraining order, denied the motion for a permanent injunction, and entered judgment in favor of Appellees. Appellants filed a timely notice of appeal on July 9, 2014.

## II.

The District Court had original jurisdiction over Appellants' federal constitutional challenges to 18 V.I.C. § 342a under 28 U.S.C. §§ 1331 and 1343. *See, e.g.*, *Roger v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (reviewing the constitutionality of a provision of Pennsylvania election law). And although the related claim—i.e., that Fawkes simply misapplied Virgin Islands election law—is not the sort over which federal district courts typically may exercise original jurisdiction,[5] we conclude that the District Court was entitled

---

[5] *See, e.g.*, *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005) ("Only in extraordinary circumstances will a challenge to a state [or local] election rise to the level of a

to exercise supplemental jurisdiction over that claim because it "form[s] part of the same case or controversy under Article III . . . ." 28 U.S.C. § 1367(a). We have appellate jurisdiction under 28 U.S.C. § 1291.

We review the District Court's decision to grant or deny a permanent injunction for abuse of discretion. We exercise plenary review, however, over the Court's underlying legal conclusions. *See Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 182 (3d Cir. 2006). In assessing whether injunctive relief is appropriate, we must consider whether:

> (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

*Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001) (citing *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471,

---

constitutional deprivation.") (internal citation and quotation marks omitted); *Bennett v. Yoshina,* 140 F.3d 1218, 1226 (9th Cir. 1998) ("In general, garden variety election irregularities do not violate the Due Process Clause, even if they control the outcome of the vote or election.").

9

1477 nn.2–3 (3d Cir. 1996)). The parties' briefing, and our analysis, focuses predominantly on whether Appellants have shown success on the merits.

## III.

This case turns on whether a candidate registered to a political party may seek "direct nomination" to the general election ballot under Subchapter II of Title 17 of the Election Code. Both parties contend that the Code operates unambiguously in their favor—in other words, Appellants argue that the Code expressly permits the candidacy (by failing to prohibit it), while Appellees believe that the Code prohibits the candidacy (by necessary implication). In the alternative, Appellees contend that insofar as the Code is ambiguous, the Supervisor of Elections, a governmental employee under the "direction, control and supervision of" the Virgin Islands Joint Board of Elections, 18 V.I.C. § 4(b), is entitled to deference in her interpretation of the Election Code under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).[6] The District Court concluded that the Election Code

---

[6] Where an agency rule is a function of its "legislative" authority, i.e., an exercise of formal rule-making capacity (typically through a notice-and-comment procedure), we apply a highly deferential standard of review under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). The District Court noted that *Chevron* deference was likely inappropriate due to the lack of formality involved in the Supervisor of Elections' pronouncements, (App. 22–26), but ultimately concluded that it need not reach the question because applying even the less-

10

was silent on the permissibility of Canegata's candidacy; that this silence was ambiguous; and that as a result, the Supervisor of Elections' interpretation of the Code, which the Court found persuasive, was entitled to deference.

In deciding whether the plain language of the Code unambiguously permits or prohibits the candidacy at issue, we "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). If the statute is unambiguous, "'judicial inquiry is complete.'" *Id.* at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). Even where a statute is "silent" on the question at issue, such silence "'does not confer gap-filling power on an agency unless the question is in fact a gap—an ambiguity tied up with the provisions of the statute.'" *Lin-Zheng v. Att'y Gen.,* 557 F.3d 147, 156 (3d Cir. 2009) (en banc) (quoting *Sun Wen Chen v. Att'y Gen.*, 491 F.3d 100, 107 (3d Cir. 2007), *overruled on other grounds by Lin-Zheng*, 557 F.3d at 147)). "An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent." *Burns v. United States*, 501 U.S. 129, 136 (1991), *abrogated on other grounds by Booker v. United States*, 543 U.S. 220 (2005).

Here, Subchapter II of the Election Code provides an express statutory procedure for appearance on the general election ballot by way of direct nomination. Although

---

deferential *Skidmore* standard justified denial of the motion for a permanent injunction.

11

Subchapter II contains certain procedural requirements related to naming conventions, *see* 18 V.I.C. § 384, there is no statement that a candidate's eligibility to proceed under that Subchapter turns on a candidate's lack of any party affiliation. And § 342a, initially relied upon by the Supervisor of Elections in her Notice of Defect, imposes a party-affiliation requirement only in connection with nomination *petitions*, not nomination *papers*. Thus, like the District Court, we conclude that the Code does not expressly prohibit Canegata's candidacy. At the same time, however, we recognize that the plain language of the Code does not affirmatively *permit* Canegata's candidacy either.

We therefore consider what to make of the Election Code's silence regarding the participation of party-affiliated candidates in the Subchapter II nomination process. We begin by noting that the Election Code, when it was redrafted in 1963, was modeled on Pennsylvania election law. Subchapter I, like the Pennsylvania Code, explicitly requires that a candidate be a member of a particular political party for his name to appear on that party's primary ballot by way of nominating petition. *Compare* 18 V.I.C. § 344(a), *with* 25 Pa. Cons. Stat. § 2867. Subchapter II, however, departs from Pennsylvania law in a crucial respect. The Pennsylvania analogue to Subchapter II contains a requirement that a "nominating paper" candidate, i.e., one proceeding by direct nomination, not be a member of a political party within 30 days of that year's primary. *See* 25 Pa. Cons. Stat. § 2911(e)(6). In other words, Pennsylvania law would require that Canegata divest himself of his affiliation with the Republican Party to pursue his bid for Lieutenant Governor. Other states, too, have express provisions on this point, and the Supreme Court confronted the constitutionality of such

12

provisions nearly 40 years ago. *See Storer,* 415 U.S. at 728 (upholding constitutionality of California law disqualifying independent candidates who were registered with a political party within one year prior to the immediately preceding primary election). And yet Subchapter II does not contain that clause, or any clause having the same effect.

The distinction between Subchapter I and Subchapter II was made more pronounced by the Virgin Islands Legislature's adoption, in 2005, of § 342a, which imposes a party-affiliation requirement only in connection with "nomination *petitions*." 18 V.I.C. § 342a (emphasis added).[7] The Legislature, then, has twice considered a party-affiliation requirement in connection with the nomination process for public office and twice applied that requirement only to candidacies under Subchapter I. From this we infer that the absence of a party-affiliation clause in Subchapter II is intentional.

---

[7] Section 342a is titled *Prohibition against persons registered to a political party running as a no-party or independent candidate*, which might seem to expressly bar Canegata's candidacy here. The Virgin Islands Code specifies, however, that "[t]he classification and organization of the titles, parts, chapters, subchapters, and sections of this Code, and the headings thereto, are made for the purpose of convenient reference and orderly arrangement, and no implication, inference, or presumption of a legislative construction shall be drawn therefrom." 1 V.I.C. § 44. Thus, we afford no weight whatsoever to the title to § 342a.

13

The District Court's otherwise-comprehensive opinion did not address these conspicuous departures. Instead, the Court relied on § 384, which imposes certain naming protocols on Subchapter II candidates, as evidence that the Virgin Islands Legislature wished to prevent registered members of political parties from pursuing Subchapter II candidacies. (App. 20–21.) On its face, however, § 384 dictates no such result. It merely prevents a no-party candidate from feigning association with a real or fictional political party, such as by running as a "Democratt," or a representative of the "Get Rich Quick" party.

We acknowledge that under Appellants' reading of § 384, the Election Code not only permits, but requires, that the general election ballot allow only those who win their party's primary to be identified with their party's name. Thus, a registered Republican like Canegata, who obtains access to the ballot via the nomination paper process, would be designated on the general election ballot as an "Independent." This would convey only that he is not the designated choice of his party and thereby ensure that the electorate is not mislead to believe that he emerged as his party's candidate from the party's primary election process. Under this statutory scheme, the Legislature has decided that protection of the party's identity and "brand" is important and the way candidates appear on ballots furthers this goal.[8]

---

[8] As recognized by the District Court, this reading of the statute creates a situation whereby a person who is registered with a political party can seek access to the general election ballot via the nomination paper process but not disclose his political affiliation on the nomination paper and

14

In sum, the Election Code does not expressly require that Canegata renounce his party affiliation in order to seek office by direct nomination. For the reasons stated above, we are persuaded that the Code's silence on this point is not ambiguous, and that the District Court erred in finding otherwise.[9] As a result, we conclude that Appellants have

_____

appear on the ballot under the term "independent." 18 V.I.C § 384. As a result, both the nomination paper and general election ballot convey that the candidate has no party affiliation when in fact he has one. While there is a strong interest in ensuring that the electorate has accurate information about the candidate, the statutory scheme does not completely advance it. It is up to the Legislature, however, to determine the importance of this interest and select the means it deems warranted to address it.

[9] We decline to consider Appellees' argument that Canegata's candidacy is barred under 18 V.I.C. § 410(b), which states that "[i]n any general election year a person may file either a nomination petition pursuant to [§] 344 of this chapter or a nomination paper pursuant to subchapter II, but not both." In 2014, Canegata submitted not only the nomination *paper* at issue here, but also a nomination *petition* to seek reelection as Republican Party Chair. As noted by the District Court, it is a "bedrock principle of administrative law that judicial review of an agency's decision is limited to the rationale that the agency provides." *Konan v. Att'y Gen.*, 432 F.3d 497, 501 (3d Cir. 2005). Here, the Supervisor of Elections did not cite § 410(b) as a factor in its disqualification of Canegata's candidacy, and consequently gave him no opportunity to cure any defect in that regard.

15

demonstrated actual success on the merits of the question presented. In light of that outcome, we further conclude that Appellants have satisfied their burden of demonstrating that (1) Appellants would be irreparably injured if an injunction were denied; (2) a permanent injunction would not result in even greater harm to Appellees; and (3) an injunction would be in the public interest.

Accordingly, we will vacate the District Court's judgment in favor of Appellees and remand for further proceedings consistent with this opinion.

## IV.

For the aforementioned reasons, we will vacate the District Court's order of July 7, 2014, and remand for further proceedings consistent with this Opinion.[10]

---

[10] Because of our conclusions above, we do not address the argument that the reading of the Code proposed by the Supervisor of Elections would constitute an impermissible "political test" under 48 U.S.C. § 1561 and violate the First Amendment. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." (citing *Three Affiliated Tribes of Ft. Berthold Reservation v. Wold Eng'g, P.C.*, 467 U.S. 138, 157–58 (1984)).