PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3826
_____

UNITED STATES OF AMERICA

v.

DONTE ISLAND,
a/k/a Norman Tomas, a/k/a Norman Thomas

Donte Island,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-03-cr-00592-001)
District Judge: Honorable Jan E. DuBois
_____

Argued: November 6, 2018

Before: AMBRO, SCIRICA, and RENDELL, *Circuit
Judges*.

(Filed: February 26, 2019)

Keith M. Donoghue, Esq. [ARGUED]
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center
Suite 540 West
Philadelphia, PA 19106

   *Counsel for Appellant*

Bernadette A. McKeon, Esq. [ARGUED]
Robert A. Zauzmer, Esq.
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

   *Counsel for Appellee*

_____

OPINION OF THE COURT
_____


**SCIRICA**, *Circuit Judge*


    In this appeal, we determine whether a defendant can count toward the service of his supervised release term a period

of time he is fugitive, that is, absent from the court's supervision. The statutory provisions governing supervised release do not contain plain language—or indeed any language—that expressly resolves that question. But, as the majority of Courts of Appeals to address the question have concluded, a defendant does not in fact serve his supervised release term while he deliberately absconds from the court's supervision. Accordingly, a defendant's supervised release term tolls while he is of fugitive status.

Defendant Donte Island appealed to challenge the District Court's order revoking his supervised release and sentencing him to a term of imprisonment. Island primarily contended that under 18 U.S.C. § 3583(i) the Court's jurisdiction terminated at the end of his three-year supervised release term. Island asserted the Court accordingly lacked authority to revoke his release based on his involvement in a police officer shooting first raised to the court a few days after those three years had passed. The government maintained the Court had jurisdiction to revoke Island's supervised release for the officer shooting violation based on an earlier-issued warrant for unrelated violations. We have no occasion to resolve that jurisdictional dispute, however, because we join the majority of Circuits that have addressed the issue to hold Island's supervised release term tolled while he was fugitive from the court's supervision. As a result of that tolling, Island's term of supervised release had not yet expired when the later warrant was issued. Because the District Court therefore had jurisdiction over the second warrant and underlying petition of violation, we will affirm.

**I.**

3

Following a jury trial in 2004, the District Court sentenced Island to 110 months' imprisonment and 3 years' supervised release for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). Island commenced that three-year supervised release term on June 26, 2013, and it was scheduled to end on June 25, 2016.

Island completed the first two years of his release term without incident, but on September 18, 2015, Island's probation officer filed a petition of violation. The petition alleged Island had breached the terms of his release by committing several technical, *i.e.*, noncriminal or minor, violations, such as failing to notify his probation officer of a changed address and failing several drug tests. The petition noted that "[m]ore troublesome" among the violations was Island's failure to report to his probation officer. App'x 34. The officer relayed that Island "ceased reporting as instructed" on July 17, 2015, after which his "whereabouts [were] unknown." App'x 34, 28. The petition chronicled over half a dozen attempts to contact Island in the coming months, none of which were successful. Island failed to report for a scheduled meeting, then did not respond to phone calls, voicemails, letters, or emails sent to him at several possible numbers and addresses. The Court issued a warrant on the basis of that petition the day it was filed, but that warrant remained outstanding.

On June 27, 2016—just over three years after Island's supervised release term had begun—the probation office filed a second petition of violation, styled as an "[a]mended" version of the first. App'x 35. The Court again issued a warrant the same day, now based on a new violation. The second petition alleged Island had committed a serious violation of the terms

4

of his release on June 21—just under three years after Island's supervised release term had begun—by firing a weapon at two police officers, hitting one. Island was arrested and taken into custody by Delaware County authorities that day. The District Court held a teleconference with the government and Island's counsel soon after receiving the petition, and the parties then agreed to delay a hearing on both petitions of violation until after the disposition of Island's Delaware County charges. Island was convicted in July 2017 of attempted murder and other charges, then sentenced in the Court of Common Pleas of Delaware County, Pennsylvania to 33 to 100 years' imprisonment.

The District Court held a supervised release revocation hearing on December 13, 2017. The government sought the statutory maximum revocation term of 24 months' imprisonment; at the hearing, it stressed the severity of the officer shooting underlying the second violation petition. The government further emphasized Island "wasn't within hours of completing his sentence on this. . . . He was 11 months a fugitive, right, so it's not like he committed the crime on the 11th hour." App'x 57–58. In response, Island emphasized he would already be serving 33 to 100 years in prison and argued "it would be excessive and unnecessary based on the practical realities of his case" to also enforce a revocation term of imprisonment. App'x 62. The court imposed the government's recommended revocation sentence of 24 months, to run consecutively after Island's state sentence, on the basis of only the second violation petition. Island now appeals.[1]

---

[1] The District Court had jurisdiction over the original charges under 18 U.S.C. § 3231 and over the supervised release

5

**II.**

Island asserts on appeal that the District Court lacked jurisdiction under 18 U.S.C. § 3583(i) to revoke his supervised release because the warrant underlying revocation—based on the shooting—was untimely issued after the three-year calendar on his supervised release term had run. The government responds that the earlier warrant for unrelated technical violations endowed the District Court with ongoing jurisdiction, but also contends the warrant was timely because Island's three-year supervised release term was tolled while he was of fugitive status. We may "affirm on any ground supported by the record," *United States v. Mussagre*, 405 F.3d 161, 168 (3d Cir. 2005),[2] and we will here affirm on the basis that fugitive tolling of Island's supervised release term rendered the second warrant timely.

**A.**

We begin with an overview of the purpose of the supervised release scheme before turning to how fugitive tolling supports that scheme. Congress designed supervised release, laid out in 18 U.S.C. § 3583, to be "a form of postconfinement monitoring overseen by the sentencing

violations under 18 U.S.C. § 3583. This court has appellate jurisdiction under 28 U.S.C. § 1291.

[2] The parties dispute the appropriate standard of review for the question whether the District Court had jurisdiction under 18 U.S.C. § 3583(i) to revoke Island's supervised release. Because we affirm the District Court's decision on a different ground, we have no occasion to resolve that dispute.

court." *Johnson v. United States*, 529 U.S. 694, 696–97 (2000). "[T]he supervised release term constitutes part of the original sentence, and the congressional intent is for defendants to serve their full release term." *United States v. Buchanan*, 638 F.3d 448, 455 (4th Cir. 2011). As the Supreme Court has explained, "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends," providing "individuals with postconfinement assistance" through the supervision of the court. *United States v. Johnson*, 529 U.S. 53, 59 (2000). The court can provide such assistance because, "[w]hile on supervised release, the offender [is] required to abide by certain conditions," *Johnson v. United States*, 529 U.S. at 697, such as regularly reporting to a probation officer, pursuing schooling or work, and refraining from further criminal activity, *see* U.S.S.G. § 5D1.3(c); 18 U.S.C. § 3583(d). Congress authorized supervising courts to revoke supervised release and order reimprisonment when defendants fail to meet their release conditions. *See id.* § 3583(e); *Johnson v. United States*, 529 U.S. at 697.

The plain language of the supervised release statutory provisions is, contrary to the dissent's suggestion, silent on how a defendant's failure to comply with release terms effects the running of his sentence. *See* 18 U.S.C. §§ 3583, 3624. Though those provisions do not expressly provide for tolling when a defendant absconds from supervision, fugitive tolling furthers the purposes of the supervised release scheme. *See Staples v. United States*, 511 U.S. 600, 605 (1994). When a defendant under supervised release fails to meet release conditions by absconding from supervision, a court cannot effectively oversee his transition to the community. The majority of Courts of Appeals to address this question have

accordingly determined a defendant's term of supervised release is tolled during the period he is of "fugitive" status, *i.e.*, fails to report and comply with the terms of his postrelease sentence. *See United States v. Barinas*, 865 F.3d 99, 106 (2d Cir. 2017); *United States v. Buchanan*, 638 F.3d 448, 453–58 (4th Cir. 2011); *United States v. Murguia-Oliveros*, 421 F.3d 951, 954 (9th Cir. 2005). *But see United States v. Hernandez-Ferrer*, 599 F.3d 63, 67–68 (1st Cir. 2010) (declining to adopt fugitive tolling for supervised release).

The fugitive tolling doctrine reflects two key principles that align with the purposes of supervised release. *First*, the rehabilitative goals of supervised release are served only when defendants abide by the terms of their supervision—those goals are not served simply by the passage of time during the release term. "Mere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence." *Anderson v. Corall*, 263 U.S. 192, 196 (1923). A supervising court cannot offer postconfinement assistance or ensure compliance with the terms of release while a defendant is truant. *See Barinas*, 865 F.3d at 107 (reasoning that measuring a supervised release term "by rote reference to a calendar" is "inconsistent . . . with Congress's goals in requiring supervised release"); *Murgia-Oliveros*, 421 F.3d at 954 ("A person on supervised release should not receive credit against his period of supervised release for time that . . . he was not in fact observing the terms of his supervised release.").

*Second*, the fugitive tolling doctrine reflects the settled principle that defendants are not generally credited for misdeeds, such as failing to comply with the terms of supervised release. *See Buchanan*, 638 F.3d at 452 (recognizing the "general rule that 'when the service of a

8

sentence is interrupted by conduct of the defendant the time spent out of custody on his sentence is not counted as time served thereon'") (quoting *United States v. Luck*, 664 F.2d 311, 312 (D.C. Cir. 1981)); *United States v. Crane*, 979 F.2d 687, 691 (9th Cir. 1992) (explaining the fugitive tolling doctrine enables courts to avoid "reward[ing] those who flee from bench warrants and maintain their fugitive status until the expiration of their original term of supervised release"). As the Second Circuit noted, the fugitive tolling doctrine corresponds to a variety of procedural doctrines that prevent rewarding fugitive defendants for misconduct: fugitive defendants are barred from invoking statutes of limitations, *see* 18 U.S.C. § 3290; appeals can be dismissed if defendants abscond, *see Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993); and defendants may not credit toward a term of imprisonment time when they have escaped from prison, *Corall*, 263 U.S. at 196. *See Barinas*, 865 F.3d at 107–08.

Because the fugitive tolling doctrine helps realize the design and purpose of supervised release, we join the majority of circuits to have considered the question and recognize a supervised release term tolls while a defendant is of fugitive status. A defendant cannot count toward his sentence time spent out of the court's supervision as a consequence of his own doing. At the same time, the defendant's absence does not free him to violate the terms of his supervised release without consequence; the defendant remains responsible for his violating conduct.[3] Fugitive tolling does not lift the conditions

---

[3] As the Fourth Circuit explained:

> When a defendant absconds while on supervised release, his absence precludes the sentencing court from exercising supervision over him.

9

of a defendant's supervised release, but instead recognizes the goals of supervised release are not served when defendants deliberately fail to follow its conditions.

This conclusion follows readily from our existing law. We considered the application of tolling doctrines to supervised release in *United States v. Cole*, 567 F.3d 110 (3d Cir. 2009), where we held supervised release would not toll when a defendant was deported as a condition of supervised release. We noted deportation is a statutorily-contemplated condition of supervised release under 18 U.S.C. § 3583(d), and reasoned "[i]f a defendant is removed and ordered excluded from the United States as a condition of supervised release, how can it be that the period of supervised release is tolled during that period?" *Id.* at 115. We compared that unsuccessful deportation tolling argument to 18 U.S.C. § 3624(e), which expressly provides for tolling of a supervised release period where "the person is imprisoned in connection with a

> Tolling is necessary in that instance to ensure that, upon being apprehended, the defendant will be subject to judicial supervision for a complete term. However, that does not mean that a defendant who has absconded thereby nullifies the terms and conditions of the supervised release order during his flight. Rather, the terms and conditions remain in effect, and the fugitive-defendant is not at liberty to embark on a "holiday" from them. To the extent that this result may seem harsh, it is the defendant's own misconduct which creates it.

*Buchanan*, 638 F.3d at 458; *see also Barinas*, 865 F.3d at 109.

10

conviction for a Federal, State, or local crime" for at least 30 days. That comparison demonstrated Congress had considered two circumstances in which the defendant would be outside the court's supervision—deportation and imprisonment—and determined how that difference would affect the running of the supervised release term. In the case of deportation, where the defendant's distance from supervision results from Congress's design in 18 U.S.C. § 3583(d), the defendant would get credit for time served; while in the case of imprisonment, where the defendant's own actions lead to interruption of the release term, the release term would toll.

We find unconvincing the reliance of Island and the dissent on *Cole* to contend imprisonment is the only context in which supervised release may be tolled. We found "persuasive Cole's argument that the canon of *expressio unius est exclusio alterius* suggests that where Congress has explicitly allowed for tolling only when the defendant is imprisoned on another charge, it does not intend for district courts to toll supervised release under any other circumstance." 567 F.3d at 115. The First Circuit similarly depended on the *expressio unius* canon in rejecting the fugitive tolling doctrine. *See Hernández-Ferrer*, 599 F.3d at 68. But as noted, Congress explicitly laid out how imprisonment and deportation would affect the running of a supervised release term. We accordingly inferred in *Cole* that in addressing deportation and treating it as a condition of supervised release, Congress determined tolling should not then apply. But Congress did not address at all whether tolling principles should apply when a defendant is fugitive from the court's supervision.

Indeed, Congress was silent on the question. While the dissent suggests that silence counsels in favor of proscribing

fugitive tolling, we note, as some of our sister Circuits have, "[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept" such as the one that a defendant cannot profit from his misdeeds, "it makes that intent specific." *Midatlantic Nat. Bank v. New Jersey Dep't of Env. Protection*, 474 U.S. 494, 501 (1986); *see Barinas*, 865 F.3d at 109 ("[W]e typically expect a clearer expression of an intention to override such longstanding precepts as the principle that a fugitive should not profit by his unlawful or contumacious conduct."); *Buchanan*, 638 F.3d at 456 ("We find no indication to suggest that Congress considered the issue and intended to preclude the judicially created doctrine of fugitive tolling in the supervised release context."); *cf. Young v. United States*, 535 U.S. 43, 52 (2002) (drawing "no negative inference from the presence of an express tolling provision" in one section of the Bankruptcy Code "and the absence of one in" another section, where the differing treatment "would be quite reasonable"). Recognizing tolling only in the single case of imprisonment would in fact, as our sister Circuits have explained, "impede achievement of Congress's stated goals for supervised release." *Barinas*, 865 F.3d at 109.

Our reasoning in *Cole* accords with the premises of fugitive tolling and reflects the distinction between defendants who deliberately defy the conditions of supervised release and those who leave the jurisdiction not on their own but at the government's order. *Accord Barinas*, 865 F.3d at 109–10 (describing the running of a term during deportation as a "far cry from the circumstances in which [the defendant] was to remain in the United States for supervision and instead fled, in violation of the conditions imposed on him"); *Buchanan*, 638 F.3d at 457 (explaining fugitive tolling is "distinguishable"

from the decision not to toll during deportation "because the fugitive-defendant's absence arises from his own misconduct. The same cannot be said about a defendant who has been removed from the country by government order"). *Cole* confirms a defendant cannot profit from his own misdeeds; the fugitive tolling doctrine reflects that principle.

Finally, the dissent contends 18 U.S.C. § 3583(i) precludes fugitive tolling. Section 3583(i) reads:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

We have held "§ 3583(i) is in fact jurisdictional and thus not subject to equitable tolling," *United States v. Merlino*, 785 F.3d 79, 86 (3d Cir. 2015), but that holding does little to help Island because fugitive tolling is not based in Section 3583(i)'s jurisdictional grant. Section 3583(i) concerns the extension of a court's jurisdiction, but it is undisputed that a court has jurisdiction during the defendant's service of his supervised release term. We here begin with the question whether Island in fact served his supervised release term. Because, as we have explained, a defendant does not serve his term while fugitive, part of a fugitive defendant's term remains to be served. During the remainder of that supervised release term, the district court correspondingly has jurisdiction. As the Second Circuit has

13

recognized, it is not "§ 3583(i) itself" which "authoriz[es] the tolling of the supervised-release period based on the defendant's fugitive status." *United States v. Barinas*, 865 F.3d 99, 109 (2d Cir. 2017). Instead, as discussed, "such tolling is consistent with the traditional principle that an absconder should not benefit from his fugitivity and is consistent with Congress's sentencing scheme of supervision to facilitate the defendant's transition to a law-abiding life in free society." *Id.*

**B.**

For at least the period between the court's issuance of the first warrant for violating supervised release in September 2015 and the shooting leading to Island's apprehension by law enforcement in June 2016, Island was of fugitive status.[4] As Island's probation officer timely notified the court and the government confirmed at the revocation hearing, Island repeatedly failed to report for scheduled meetings and drug tests. Island did not respond to the officer's many attempts at contact in different media and at different addresses.[5] Under

---

[4] To the extent Island suggests the fugitive tolling doctrine poses administrability problems because the precise date a defendant becomes fugitive may be difficult to ascertain, such concerns are overblown—and not at issue in this case. We note the Ninth Circuit has applied the fugitive tolling doctrine for decades without noteworthy administrability problems. *See United States v. Ignacio Juarez*, 601 F.3d 885, 886 (9th Cir. 2010); *Murgia-Oliveros*, 421 F.3d at 954.

[5] In fact, had Island actually been under the court's supervision, the first warrant following technical violations of his supervised release could have been executed.

14

the fugitive tolling doctrine, Island cannot count those months spent outside the court's supervision toward his supervised release term. Accordingly, when the second warrant for violation of supervised release issued on June 27, 2016, it fell well within the tolled term. We therefore need not consider whether the first warrant endowed the District Court with jurisdiction over the unrelated later violations alleged in the second warrant. Because the second warrant was issued within the supervised release term properly accounting for fugitive tolling, we will affirm the trial court's revocation of supervised release.

**RENDELL**, <u>Circuit Judge</u>, <u>dissenting</u>:

The Majority opinion focuses on the goals of supervised release and concludes that tolling for fugitives from supervised release is appropriate. I believe this is incorrect for two reasons. First, the proper focus should be on the plain language of 18 U.S.C. § 3583(i), which states that the court has the power to extend the term of supervised release only when a warrant is issued prior to the expiration of the term of supervised release. Second, two precedential opinions of this court—*United States v. Merlino* and *United States v. Cole*—should lead us to conclude that tolling does not apply. Thus, tolling does not apply and the District Court was without the power to extend the term of Island's supervised release based upon tolling.

Section 3583(i) grants the court the power to extend supervised release "beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." 18 U.S.C. § 3583(i). By its plain language, a court has the power to adjudicate matters *after* the expiration of supervised release *if* a warrant or summons had been issued *before* the expiration of supervised release. There is no dispute that the District Court here issued the warrant *after* the technical term of supervised release expired. When faced with a similar issue we held in *United States v. Merlino* that § 3583(i) is "in fact jurisdictional," and thus cannot be equitably tolled. 785 F.3d 79, 86 (3d Cir. 2015). I suggest that, in light of the express statutory directive of § 3583(i) and our opinion in *Merlino*, the

1

Majority's holding that "a supervised release term tolls while a defendant is of fugitive status" is wrong. Maj. Op. at 9.

In addition, Congress did incorporate tolling under 18 U.S.C. § 3624(e) for periods of imprisonment,[1] but has not incorporated tolling for fugitive status. We must determine whether Congress' silence regarding tolling for supervised release is evidence of its intent to preclude or include tolling for fugitive status. *See, e.g., Coffelt v. Fawkes*, 765 F.3d 197, 202 (3d Cir. 2014) (quoting *Burns v. United States*, 501 U.S. 129, 136 (1991)) (considering "textual and contextual evidence" to resolve congressional silence). The expression of one exception is often, but not always, evidence of the exclusion of other exceptions. *See Marx v. General Rev. Corp.*, 568 U.S. 371, 381 (2013) ("The force of any negative implication, however, depends on context.") (citing *expressio unius est exclusio alterius*). *Expressio unius* applies if it is "fair to suppose that Congress considered the unnamed possibility and meant to say no to it." *Id.* (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)). In essence, if Congress incorporated an exception to a rule, and in doing so would have considered other exceptions, but failed to include them, then we should presume Congress intended to exclude them.

That is the case here. Section 3624 is an express exception to § 3583. At a minimum, § 3624 is evidence that Congress considered tolling, and nonetheless only found

---

[1]Section 3624(e) provides: "A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." 18 U.S.C. § 3624(e).

2

imprisonment to be an adequate justification. More telling is that, as the First Circuit noted, "the Sentencing Reform Act of 1984, which . . . codified prior case law that provided for tolling when a probationer was imprisoned for another offense, [] made no similar reincorporation of prior case law" for fugitive status. *United States v. Hernandez-Ferrer*, 599 F.3d 63, 68 (1st Cir. 2010).[2] "If Congress had wanted to authorize tolling when an offender absconds from supervision, we believe that it would have said so." *Id.*

We have reasoned similarly and reached the same conclusion in the deportation context. In *United States v. Cole*,

---

[2] Prior case law in the probation context lends further support to the conclusion that Congress intended § 3583(i)'s warrant requirement to govern the extension of a term of supervised release for fugitivity. In *United States v. Martin*, the Tenth Circuit addressed a defendant who absconded from federal supervision for three years, and determined that the period of supervision "tolled from the time the New Jersey court *issued its violator warrant* until the time Martin was returned to federal supervision after release from the Colorado state prison." 786 F.2d 974, 975 (10th Cir. 1986) (emphasis added). Similarly, in *Nicholas v. United States*, the Ninth Circuit held "the five-year probationary period prescribed by section 3651 was extended by operation of law by the amount of time within the five-year period during which a probationer, in violation of the terms of his probation, *and for whom an arrest warrant has issued*, has voluntarily absented himself from the jurisdiction." 527 F.2d 1160, 1162 (9th Cir. 1976) (emphasis added). In both cases, and just like under § 3583(i), the issuance of a valid warrant was a prerequisite to the court maintaining jurisdiction for an offender who absconded from supervision.

we held that the District Court plainly erred when it ordered the defendant's supervised release be tolled during the period he is removed from the country. 567 F.3d 110, 117 (3d Cir. 2009). The Majority contends that the fugitive tolling doctrine "follows readily from our existing law," Maj. Op. at 10, since "*Cole* confirms a defendant cannot profit from his own misdeeds," Maj. Op. at 13. Far from confirming the fugitive tolling doctrine, in *Cole* we reasoned appropriately, and contrary to the Majority, that if tolling has not been provided for, it is not authorized: "Congress has provided for an exception to this rule in only one situation: where the defendant is imprisoned for more than 30 days for another conviction . . . the canon of *expressio unius est exclusio alterius* suggests that where Congress has explicitly allowed for tolling only when the defendant is imprisoned on another charge, it does not intend for district courts to toll supervised release under any other circumstance." *Cole*, 567 F.3d at 114–15. The fact that tolling for fugitive status, as opposed to tolling for deportation, is a "traditional principle," Maj. Op. at 14 (quoting *United States v. Barinas*, 865 F.3d 99, 109 (2d Cir. 2017)), makes it *more*, not less, likely that it would have been contemplated and incorporated by Congress.

While the Majority suggests that defendants would receive a windfall without a tolling provision, the opportunity to benefit from absconding is small. "If an offender absconds before the expiration of his supervised release term, he will not do so with impunity." *Hernandez-Ferrer*, 599 F.3d at 69. As long as the Government issues a warrant before the expiration of the term of supervised release, it may extend the term of supervised release "for any period reasonably necessary for the adjudication of matters arising before its expiration[.]" 18 U.S.C. § 3583(i). And because absconding from supervision

4

is, on its own, grounds to revoke supervision, there is little excuse for the Government failing to issue a timely warrant in most circumstances. Although it is possible for an eleventh hour violation to go unpunished, such a circumstance is rare "given the ease with which the statute can be satisfied," *United States v. Janvier*, 599 F.3d 264, 268 (2d Cir. 2010), and such is the nature of jurisdictional statutes. *See Dolan v. United States*, 560 U.S. 605, 610 (2010) (describing the prohibition of a jurisdictional statute as "absolute"). And in such a case, the only disadvantage to the Government occasioned by adhering to § 3583(i) is that the new warrant must stand on its own, *i.e.*, it is a warrant for a violation of law, not a violation of supervised release.

The ease and clarity of the current regime of a defined term of supervised release only makes the decision to permit tolling for fugitivity more troubling, especially considering the difficulties associated with defining a "fugitive" in the supervised release context. Contrary to the Majority's assertion, Maj. Op. at 14, n.4, in the Ninth Circuit, district courts have extended the deadline of supervised release for "merely [] failing to comply with the terms of supervised release." *United States v. Ertell*, Case No. 1:11-cr-00278-SAB 2016 WL 7491630 at *3 (E.D. Cal. December 29, 2016) (quoting *U.S. v. Murguia-Oliveros*, 421 F.3d 951, 953 (9th Cir. 2005)). As a result, the clock may stop and start again when, for example, a supervisee fails to immediately notify his supervisor of a change in address, but does so a week later, fails to show up for a drug test, but calls his supervisor two hours after the missed appointment, and misses a required Alcoholics Anonymous meeting, but shows up to the meeting the following week. The best answer to these complex factual questions is found in the certainty of the text of the statute: "as

5

long as a warrant or summons issues before the expiration of the term, an offender who remains a fugitive will still be subject to the court's jurisdiction once located, and his conduct while a fugitive will be considered at sentencing." *Hernandez-Ferrer*, 599 F.3d at 69. Instead, the Majority's judicially created exception to § 3583(i) transforms a "minimal burden," *Merlino*, 785 F.3d at 85, on the Government into an onerous task for the courts, and a complicated regime for the supervisee in attempting to determine the applicable period of tolling, and thus, when his term of supervised release ends.

\*　　\*　　\*

The First Circuit correctly noted that, "[i]n the end, this dispute boils down to a matter of statutory construction." *Hernandez-Ferrer*, 599 F.3d at 66. Congress chose not to toll when a person absconds from supervised release, and in the absence of clear congressional intent, the plain language of § 3583(i) should control. Moreover, requiring the Government to fulfill the minimal burden of issuing a warrant before the expiration date is preferable to creating a new amorphous exception to a strictly jurisdictional statute. Thus, I respectfully dissent and would vacate the sentencing order and remand to the District Court for further proceedings.[3]

---

[3] I can only speculate as to what those proceedings might entail. There would remain the issue of whether the Court would re-sentence Island believing that it had jurisdiction over the violation contained in the June warrant based on the earlier September warrant issued for factually unrelated violations. *See* Maj. Op. at 3–4. I would conclude that it does not have jurisdiction. *See, e.g., United States v. Campbell*, 883 F.3d 1148, 1153 (9th Cir. 2018) (concluding an earlier warrant does

6

not provide jurisdiction for factually unrelated violations). Of course, the Court could then consider whether to sentence Island for the violations alleged in the September warrant. It is unclear whether the Court previously did so. The District Court found that Island had committed those violations but stated that it chose "not . . . to impose punishment[.]"App. 69. It may have done so knowing it would impose punishment based on the later warrant.