[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13921

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAMES REGINALD TALLEY,
a.k.a. Reggie Jones,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:09-cr-00061-VMC-MAP-1

_____

Before WILSON, GRANT, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal requires us to decide whether absconding during a term of supervised release tolls the supervised release period. James Reginald Talley, a convicted felon, appeals the district court's judgment revoking his supervised release and ordering him imprisoned based in part on a violation committed after his supervised release had lapsed but while he was, based on the district court's findings, a fugitive from justice. We hold that the district court erred in tolling Talley's period of supervised release based on his fugitive status. In doing so, we join the First Circuit and part company with the Second, Third, Fourth, and Ninth Circuits. Accordingly, we vacate the district court's judgment and remand for resentencing.

## I.

In 2010, James Talley pleaded guilty in the United States District Court for the Middle District of Florida to one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Talley in 2016 to 100 months' imprisonment followed by three years of supervised release. The court imposed numerous conditions on Talley's supervised release, including that Talley "shall not commit another federal, state or local crime"; "shall not leave the judicial district without the permission of the court or probation officer"; "shall report to the probation officer in a manner and frequency directed by the court or probation officer"; "shall answer truthfully all inquiries by

the probation officer and follow the instructions of the probation officer"; "shall notify the probation officer at least ten (10) days prior to any change in residence or employment"; "shall not," unless granted permission by the probation officer, "associate with any persons" who are "engaged in criminal activity" or who have been "convicted of a felony"; "shall permit a probation officer to visit him . . . at any time at home or elsewhere"; "shall participate in a substance abuse program," which will include "submit[ting] to random drug testing"; and "shall cooperate in the collection of DNA, as directed by the Probation Officer."

Talley completed his custodial sentence and began serving his three-year term of supervised release on May 10, 2018. Less than four months before his supervision was set to expire, the probation office filed a petition alleging that Talley violated two conditions of his supervised release and asking the district court to issue a warrant for his arrest.

The first count of the petition alleged that Talley violated Condition Three of the Standard Conditions of Supervision, which required him to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." Specifically, Talley, "[o]n multiple occasions . . . failed to follow the instructions of his probation officer" by "ma[king] himself unavailable for supervision." A memorandum accompanying the petition described Talley's alleged violation in greater detail. The memorandum explained that the last contact the probation office had with the Talley was on September 15, 2020, when his probation

officer met with him at his job. During the meeting, Talley presented verification that he had suffered a heart attack the previous month and told the probation officer that his employer "would allow him to take leave until he was healthy to return to work." On September 29, 2020, the officer returned to Talley's place of employment, but the operations manager informed the officer that Talley was out on medical leave.

The officer then made many different attempts to contact Talley between October and December 2020, but Talley did not respond. For example, the probation officer visited Talley's residence on October 28, but no one was home. The officer left a note at Talley's door directing him to contact the officer immediately, but he never did. On November 24, the officer returned to Talley's place of employment, but Talley was not there. The officer spoke to the operations manager, who explained that Talley "remained employed but was on long-term disability." That same day, the officer emailed Talley, directing him to contact her the following day, but he did not respond. The next day, the officer met with Talley's aunt at her home, and she agreed to tell Talley that the officer was trying to contact him. In December, the probation officer called Talley's cell phone multiple times, but the outgoing voicemail message stated that "it was not accepting calls at this time." The officer made multiple calls to Tampa General Hospital, but "there was no indication that [Talley] was admitted."

On January 12, 2021, the probation officer spoke with Talley's employer, who informed the officer that Talley "was supposed to return to employment after his medial situation improved," but that Talley "ha[d] not contacted or returned" to work. The probation officer made a final attempt to contact Talley at his residence on January 20, 2021, but no one was home. The officer again left a note at his door directing Talley "to contact [the officer] immediately," but Talley did not respond. The memorandum explained that the probation officer "exhausted all resources to locate [Talley] and his whereabouts remain[ed] unknown."

The second count of the petition alleged that Talley violated Condition Nine of the Standard Conditions of Supervision, which prohibited him from associating with anyone "engaged in criminal activity" or "convicted of a felony." The petition alleged that in September 2020, a probation officer "obtained verified information that [Talley] was associating with . . . a known convicted felon who is presently on a three-year term of supervised release." That person apparently reported to her probation officer that she was in a romantic relationship with Talley.

Based on these allegations, the district court issued a warrant for Talley's arrest on January 26, 2021. But he was not detained until May 2022, when he was arrested by Florida law enforcement officers for battery and prosecuted for that offense in Florida state court. Talley was convicted in August 2022. Later that month, he made an initial appearance in federal court on the petition for revocation of supervised release.

Based on Talley's battery arrest and conviction, a probation officer filed a superseding petition to revoke Talley's supervised release. The superseding petition repeated the two original counts and added a third count, premised on the felony battery that Talley had been convicted of in August 2022. It alleged that he had violated the condition of supervised release that he not commit another state or federal offense.

At the final hearing on the superseding petition, Talley's counsel explained that in August 2020, Talley had suffered a "massive heart attack." According to Talley's counsel, this health crisis meant that he could not work, lost access to needed medication, and fell out of contact with his probation officer. Nonetheless, Talley claimed (at least through his counsel) that he spoke with his probation officer in December 2020, shortly before the officer filed the petition to revoke his supervised release.

The district court asked Talley whether he would be admitting to any of the violations in the superseding petition. Talley (through counsel) responded that "without question, [he] w[ould] be admitting to the first one," i.e., failing to maintain contact with probation. As to the second violation— associating with a felon— Talley admitted to knowing the person referenced in the petition but denied having any relationship with her. As to the Florida battery violation, Talley argued that "he c[ould] admit to the conduct itself," but he had "a jurisdictional issue" with the violation. He stated that the felony battery offense occurred in May 2022, but his supervised release term expired in May 2021.

The government argued in response that "the time that Mr. Talley absconded from supervised release does toll, and the [c]ourt should still have jurisdiction over him, including [for] the conduct that happened in 2022." The district court agreed, noting that, in general, "when somebody absconds or . . . leaves the jurisdiction and can't be located," there is tolling because "we want to discourage people from engaging in that kind of activity." Accordingly, it overruled Talley's objection, stating that it had "jurisdiction to adjudicate [Talley] with respect to the [battery violation], even though it took place sometime in 2022, after the supervision expired, because he had lost contact with the probation office." The government dismissed the second count based on associating with a felon.

The court then asked Talley if he understood that he was admitting to violating the conditions of supervision by making himself unavailable for supervision and violating the terms of his supervision by committing the offense of felony battery—subject to his preserved argument that he was not on supervised release at the time he committed the battery. Talley stated that he understood and was waiving his right to a hearing on those violations.

The court then adjudicated Talley guilty with respect to those two violations. The guidelines range was 18 to 24 months' imprisonment. The court revoked Talley's supervised release and sentenced him to serve an additional 18 months' imprisonment "to be concurrent with any sentence already served or to be served"

that a state court imposed. The district court did not impose a term of supervised release to follow the custodial sentence.

Talley timely appealed.

## II.

We review the district court's jurisdiction to revoke a term of supervised release *de novo*. *United States v. Johnson*, 581 F.3d 1310, 1311 (11th Cir. 2009).

## III.

The Sentencing Reform Act of 1984 empowers a court to impose a term of supervised release following imprisonment. *See* 18 U.S.C. § 3583(a), (b). "Supervised release departed from the parole system it replaced by giving district courts the freedom to provide postrelease supervision for those, and only those, who needed it." *Johnson v. United States*, 529 U.S. 694, 709 (2000). The supervised release term begins the day the offender is released from prison. 18 U.S.C. § 3624(e). During the term, offenders are bound to follow court-ordered conditions. Some conditions apply to all terms of supervised release, such as the requirement "that the defendant not commit another Federal, State, or local crime during the term of supervision." *Id.* § 3583(d). But a district court has discretion to impose other conditions of supervised release, *see id.*, such as requiring the offender to "report to a probation officer as directed by the court or the probation officer," *id.* § 3563(b)(15). If the offender violates a condition of his supervised release during his term of supervision, the district court has jurisdiction to revoke the offender's

supervised release and impose a period of imprisonment and a new term of supervised release. *Id.* § 3583(e)(3), (h).

The district court held that Talley had violated two conditions of supervised release. The court found that he had failed to follow his probation officer's instructions in 2020 and 2021. The court also found that he had committed a new state offense based on the state-law battery he committed in May 2022.

There's no question the district court had jurisdiction to revoke Talley's supervised release based on his unavailability for supervision during his term of supervised release. This is so even though the court did not issue its revocation order until after Talley's supervised release term expired. The Code provides that a court's jurisdiction to revoke supervised release "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." *Id.* § 3583(i). Talley concedes that his unresponsiveness violated the condition that he follow the probation officer's instructions, and the district court issued a warrant for that violation before the scheduled expiration of Talley's supervised release term.

The dispute here is instead whether the district court also had jurisdiction to revoke Talley's supervised release based on his commission of Florida law battery, which occurred many months after the scheduled expiration of his supervised release term. The government argues that the district court had jurisdiction over this

violation. Applying a judicially crafted "fugitive tolling doctrine," the government asserts that a sentencing court may toll an offender's term of supervised release during any period that he or she evades supervision. Because Talley was a fugitive from 2020 until his 2022 battery arrest, the argument goes, his term of supervision extended to that arrest, rather than expiring in 2021 as scheduled.

The circuits are divided over the application of "fugitive tolling" to terms of supervised release. A majority of courts to consider the question apply the doctrine, holding that absconding from supervision equitably tolls the offender's supervised release period during his truancy. *See United States v. Island*, 916 F.3d 249, 251 (3d Cir. 2019); *United States v. Barinas*, 865 F.3d 99, 108–10 (2d Cir. 2017); *United States v. Buchanan*, 638 F.3d 448, 455–57 (4th Cir. 2011); *United States v. Murguia-Oliveros*, 421 F.3d 951, 952 (9th Cir. 2005).[1] But we are convinced that the minority view is the correct one. Accordingly, we join the First Circuit in holding that "there can be no tolling of the period of supervised release on the basis of fugitive status." *United States v. Hernandez-Ferrer*, 599 F.3d 63, 64 (1st Cir. 2010); *see also Island*, 916 F.3d at 256–59 (Rendell, J., dissenting).

---

[1] The government also cites *United States v. Cartagena-Lopez*, 979 F.3d 356, 359 (5th Cir. 2020) (adopting majority view). But that panel subsequently withdrew its opinion and dismissed the appeal as moot. *See United States v. Cartagena-Lopez*, No. 20-40122, 2020 WL 13837259 (5th Cir. Nov. 19, 2020). Therefore, the opinion "has no precedential value." *Henderson v. Ft. Worth Indep. Sch. Dist.*, 584 F.2d 115, 116 (5th Cir. 1978).

We think the First Circuit has the better position for two reasons. First, the justifications for fugitive tolling in other contexts—such as prison escapes—do not apply to the context of supervised release. Second, the doctrine is inconsistent with the text of the statute and our caselaw interpreting that statute. We address each reason in turn.

First, we believe that, on its own terms, the fugitive tolling doctrine has no role to play in the context of supervised release. Courts apply the doctrine of fugitive tolling to sentences of imprisonment and the like based on the commonsense proposition that "[m]ere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence." *Anderson v. Corall*, 263 U.S. 193, 196 (1923). The idea is that a person should not be credited with serving a prison sentence if he is not, in fact, in prison. "[A] convicted person . . . is not entitled to credit for time spent erroneously at liberty when there is merely a delay in executing [his] sentence." *United States v. Barfield*, 396 F.3d 1144, 1147–48 (11th Cir. 2005). So, under the fugitive tolling doctrine, the time during which a prisoner should have been in prison, but was not, is added to the end of his or her sentence. *See Anderson*, 263 U.S. at 196. Importantly, tolling does not increase the total length of a sentence. It simply pauses and then restarts the clock, such that the original end date of the sentence is pushed down the road for however long the clock was stopped.

But the government in this case is not requesting "tolling" in this customary sense. Were we to hold that Talley's term of supervised release was *tolled* while he was missing, the result would be that the scheduled period remaining would *pause* at the time he first fled (whenever that was) and would *resume* at the time he was found. *See id.* That would do little good for the government, considering that Talley's state law offense occurred during the "tolled" period. Accordingly, the government did not ask for Talley's supervised release period to pause and then resume. It instead asked the district court to *extend* Talley's supervision term at least until his state-law battery offense so that the court could revoke and resentence Talley in part because of that offense. Then, the district court revoked supervised release and sent Talley to prison for 18 months with no term of supervised release to follow. It did not add a period of supervised release to account for the period of Talley's flight. The district court's ruling means that Talley was subject to the terms of supervised release for a total of 48 months—May 2018 to May 2022—even though his 2010 sentence provided for only 36 months of supervised release.

This result is hard to square with the fugitive tolling doctrine. The doctrine is meant to ensure that an original sentence is served, not to increase a sentence's length. Endorsing the government's theory of tolling would require us to hold that the supervised release *clock* stopped whenever Talley first absconded, but the sentence itself (i.e., the conditions of supervised release) remained in effect until he was found. But it makes very little sense to conclude that Talley was not subject to his supervised release

conditions in May 2022 for the purposes of fugitive tolling, while simultaneously concluding that he violated his conditions of supervision at that time. As we have recognized in another context, "[a] supervised release order cannot simultaneously be suspended and actively in effect." *United States v. Okoko*, 365 F.3d 962, 966 (11th Cir. 2004) (citation omitted).

Not only is the government's request inconsistent with how tolling works, it's also inconsistent with the nature of supervised release. Unlike a sentence of imprisonment, a sentence of supervised release imposes "restraint[s] contemplated by the law," *Anderson*, 263 U.S. at 196, that a defendant must follow no matter where he is physically located. When a district court sentences a defendant to a term of supervised release, it imposes conditions on his liberty to encourage the defendant to avoid future criminal activity. *See Mont v. United States*, 139 S. Ct. 1826, 1833 (2019). For example, a district court must order as a condition of supervised release that the defendant "not commit another . . . crime." 18 U.S.C. § 3583(d). It also has the discretion to impose other conditions, such as maintaining contact with a probation officer, working in community service, or refraining from excessive use of alcohol. *See id*. (incorporating conditions from probation); *id* § 3563(b) (listing conditions of probation).

An individual under a term of supervised release is subject to a "restraint contemplated by the law," *Anderson*, 263 U.S. at 196—namely, the conditions of supervision—for the entire term of

supervised release no matter where he is. When an individual violates a condition of his supervised release by fleeing, he nonetheless remains subject to the conditions of his supervised release during his term. That is, those "restraint[s] contemplated by the law," *id.*, *continue to apply* even if the individual has absconded. Because the conditions of supervised release are a continuing restraint on a supervisee's liberty, even when he is violating them, there is no role for fugitive tolling to ensure that an absconder serves the full term of his sentence. He is serving that sentence, and can be revoked for violating those conditions, even while he is in flight.

Courts also justify the fugitive tolling doctrine by an asserted policy against "reward[ing] an absconder for his misconduct." *See Buchanan*, 638 F.3d at 455; *Island*, 916 F.3d at 253 ("[T]he fugitive tolling doctrine reflects the settled principle that defendants are not generally credited for misdeeds . . . ."). Again, this interest does not warrant the application of fugitive tolling to supervised release. An offender who flees supervision in violation of his supervision conditions will not evade his sentence or otherwise benefit from his misconduct. Instead, that violation grants the sentencing court authority to revoke the absconder's supervised release and resentence him to a term of imprisonment with a new term of supervised release to follow. 18 U.S.C. § 3583(e)(3), (h). A violation of a condition of supervised release—even an egregious violation like absconding—can be punished by revocation for that violation.

Finally, a court does not need extended jurisdiction to punish a defendant for committing crimes after his term of supervision

has run. In determining the consequences that attach to an offender's violation of supervised release, a court may consider all his conduct, even misconduct that occurred *after* the expiration of the supervision period—like the Florida battery in this case. *See* 18 U.S.C. § 3583(e) (incorporating Section 3553(a) factors about history and characteristics of the defendant into revocation sentencing decision); *id*. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person" that a court "may receive and consider for the purpose of imposing an appropriate sentence."). In fact, the sentencing guidelines expressly contemplate that "an upward departure may be warranted when a defendant, subsequent to the federal sentence resulting in supervision, has been sentenced for an offense that is not the basis of the violation proceeding." U.S.S.G. § 7B1.4 cmt. n.2.

The upshot is that the district court below did not need to resort to the fugitive tolling doctrine to ensure Talley was not rewarded for absconding. Talley violated the condition of supervised release requiring him to stay in contact with his probation officer. The government timely moved to revoke Talley's supervised release based on that violation before his term ran. *See* 18 U.S.C. § 3583(i). The applicable statutes allowed the district court to sentence Talley up to two years' imprisonment and one year of supervised release for that violation. And the district court was free to consider all of Talley's post-violation conduct in setting the appropriate sentence. The district court could have imposed the same

consequence on Talley for his admitted violation of supervised release by failing to stay in touch with his probation officer—an 18-month custodial sentence—without resorting to fugitive tolling to also hold him responsible for committing a state-law offense after his term of supervised release expired. *See Hernandez-Ferrer*, 599 F.3d at 69.

Second, even if the judicially created doctrine of fugitive tolling served some purpose in this context, the text of the Sentencing Reform Act strongly counsels against applying fugitive tolling to supervised release. The Act specifies two, and only two, circumstances in which a sentencing court may toll a term of supervised release. One form of tolling is provided by Section 3583(i). It tolls a term of supervised release "for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." 18 U.S.C. § 3583(i). Another form of tolling is provided by Section 3624(e). It tolls a term of supervised release while an offender "is imprisoned in connection with a conviction" for more than thirty consecutive days. *Id*. § 3624(e).

We agree with the First Circuit that "[t]he absence of an express tolling provision for fugitive status, coupled with the presence of . . . express tolling provision[s] that encompass[] other circumstances, is highly significant." *See Hernandez-Ferrer*, 599 F.3d at 67. "These two provisions delineate the only express circumstances wherein the supervised release period may be tolled." *Okoko*, 365 F.3d at 965. And neither provision permits tolling while an offender

is at large. *See Hernandez-Ferrer*, 599 F.3d at 67 ("[T]he statutory provisions touching upon supervised release neither expressly require nor expressly permit tolling during the interval when an offender is in fugitive status."). Congress knew how to authorize tolling a term of supervised release, but it chose not to do so in the fugitive context. "Where Congress knows how to say something but chooses not to, its silence is controlling." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) (quoting *In re Haas*, 48 F.3d 1153, 1156 (11th Cir. 1995)).

We applied this same reasoning to an analogous question involving deported offenders in *United States v. Okoko*, 365 F.3d 962 (11th Cir. 2004). "The sole issue" in that case was whether a district court has the authority to toll a term of supervised release while an offender is outside the United States pursuant to a deportation order. *Id.* at 964. We held that the district court lacked that authority, reasoning that Congress included only two "specific contexts in which the supervised release period may be tolled" under the Sentencing Reform Act, and "it did not include the period of time when a probationer is out of the country." *Id.* at 964–65. That "Congress has expressly provided for the tolling of a supervised release in two other sections of the Sentencing Reform Act," we explained, "suggest[s] that it did not intend for tolling during a period of deportation to be imposed by the court." *Id.* at 967.

The government argues that *Okoko* is distinguishable because, "in the case of deportation, . . . the defendant's absence from supervision 'results from Congress's design,'" not "from his own

misconduct," as in the case of a fugitive supervisee. Putting aside that our decision in *Okoko* did not rest on this reasoning, we think this distinction undermines, not supports, the government's position. It makes *more sense* to toll a defendant's term of supervised release when he has been involuntarily deported than when he has voluntarily absconded in violation of the terms of his supervised release. A court can adequately address someone's involuntary absence from the country by stopping the clock on supervised release when he leaves and restarting it when he returns. But, when a supervisee willfully violates his terms of supervised release by absconding from supervision, a court cannot address the problem by tolling his term—that is, adding the months he absconded onto the end of his sentence. The more appropriate consequence is the one already contemplated by the Sentencing Reform Act: If a supervisee absconds in violation of a term of his supervised release, the sentencing court should *enforce*, rather than toll, the sentence by revoking his supervised release and resentencing him appropriately.

In one last effort to distinguish *Okoko*, the government invokes the "rule of statutory construction . . . that if Congress intends for legislation to change the interpretation of a judicially created concept such as" fugitive tolling, it makes its intention clear. *Island*, 916 F.3d at 255 (quotation marks and citation omitted)*; see also Barinas*, 865 F.3d at 109 (same). Of course, there is no common law history of tolling terms of supervised release because supervised release is a recent statutory innovation. *United States v. Fra-*

*zier*, 26 F.3d 110, 113 n.1 (11th Cir. 1994) ("Congress created supervised release in 1984."). But, even if the presumption against a change in common law did apply here, we think Congress sufficiently overcame the presumption by enacting express tolling provisions for two other circumstances, but not for fleeing from supervision. Although Congress's intention to override a common-law rule should be *clear*, it need not be *express*. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012). And the clear implication of the Sentencing Reform Act is that Congress considered tolling supervised release but chose not to apply it in circumstances like these.

For these reasons, we reject the government's position that a term of supervised release is tolled while an offender absconds from supervision. Accordingly, Talley's supervised release term expired as scheduled in May 2021. Because his 2022 battery and resulting conviction did not occur until after that date, the district court lacked authority to revoke Talley's supervised release on that basis. But because the district court nonetheless maintained jurisdiction to revoke his supervision based on his earlier violation, we remand for the court to decide whether to revoke Talley's supervision based on that violation alone and to decide what sentence to impose for that violation. We emphasize that, in making this decision, the court may consider Talley's actions that post-date his supervision term, including the 2022 battery.

Because we hold that the fugitive tolling doctrine is inapplicable to terms of supervised release, we need not address Talley's

alternative arguments that the government did not prove he was a "fugitive" under that doctrine or that his sentence should be vacated because he was not given an opportunity to allocute.

## IV.

For the foregoing reasons, we **VACATE** and **REMAND** for proceedings consistent with this opinion.