(Slip Opinion) OCTOBER TERM, 2025 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## RICO *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 24–1056.   Argued November 3, 2025—Decided March 25, 2026

A criminal defendant, on supervised release from federal prison, must comply with various conditions—both mandatory (commit no more crimes, see 18 U. S. C. §3583(d)) and discretionary (commonly, "report to a probation officer as directed" and "notify the probation officer promptly of any change in address," §§3563(b)(15), (17)).  Violating a prescribed condition may result in the revocation of supervised release and a return to prison, §3583(e)(3), as well as an additional "term of supervised release after imprisonment," §3583(h).

   After petitioner Isabel Rico violated the terms of her supervised release conditions, the judge revoked her release and ordered her to serve two months of additional imprisonment and a new 42-month term of supervised release set to expire in 2021.  When released the second time, Ms. Rico again violated her conditions by changing her residence without notifying her probation officer.  A warrant issued for her arrest, but federal authorities did not locate her until January 2023.  As relevant here, during her abscondment, Ms. Rico committed a state law drug offense in January 2022, which resulted in a conviction.  Back in federal district court, the judge treated Ms. Rico's drug offense as a Grade A violation of her supervised release conditions and sentenced her to 16 months of incarceration followed by two more years of supervised release.  Ms. Rico appealed, arguing that the district court lacked authority to treat her drug offense as a supervised release violation because that offense occurred after her supervised term expired in June 2021.  The Ninth Circuit disagreed, describing Ms. Rico's abscondment as having "tolled" the clock so that her term continued to run until federal authorities caught up with her in 2023.  Because of that, the Ninth Circuit held, Ms. Rico's January 2022 drug offense could count as a violation of her federal supervised release.  This Court

granted certiorari to resolve a circuit split on whether abscondment automatically extends a term of supervised release.

*Held*: The Sentencing Reform Act does not authorize a rule automatically extending a defendant's term of supervised release when the defendant absconds.  Pp. 4–12.

(a) What the Ninth Circuit's challenged rule really does is use a defendant's abscondment to *extend* (not *toll*) the period of supervised release beyond what a judge has ordered.  Automatically extending a term of supervised release is not among the many tools the Sentencing Reform Act provides courts to address defendants who fail to report or otherwise violate their supervised release conditions.  The Act instructs that a term of supervised release starts "the day the person is released from imprisonment," §3624(e), and generally sets maximum lengths at one, three, or five years depending on the severity of the underlying offense, §3583(b).  Neither provision hints at an automatic extension rule, and the Ninth Circuit's rule risks permitting courts to extend supervised release beyond the statutory maximums set by Congress.  The Act also authorizes courts to revoke supervised release and impose additional imprisonment and supervised release for violations, but makes no mention of automatic extension for abscondment.  Further, an automatic extension rule disregards the limits in the Act's specific extension and tolling rules.  Section 3583(e)(2) generally permits courts to extend supervised release only after holding a hearing and considering various sentencing factors, and not beyond statutory maximums or after the term has expired.  Section 3583(i) allows revocation proceedings after a defendant's term of supervised release has expired only for matters arising before expiration and only if a warrant or summons issued during the term.  Section 3624(e) provides a true tolling rule, suspending supervised release during imprisonment of 30 consecutive days or more.  The cumulative detail of these instructions strongly suggests the absence of anything like the Ninth Circuit's rule is intentional rather than an oversight.  Pp. 4–7.

(b) The government's arguments fail to support the Ninth Circuit's rule.  The government argues because supervision requires "observation and direction," see, *e.g.*, §§3601, 3624(e), 3603(2), (3), and Ms. Rico received neither while absconding, she should receive no "credit" for that period.  But the cited provisions merely describe the probation officer's duties and indicate that supervision occurs only "during the term imposed" by the sentencing court, §§3601, 3624(e)*,* which hurts rather than helps the government's cause.  Moreover, the government's theory treats Ms. Rico as off and on supervised release at the same time.

The government's precedent arguments are also unconvincing. *Mont* v. *United States*, 587 U. S. 514, simply recognized that §3624(e)'s

Syllabus

express terms suspend a defendant's term during imprisonment for a separate state offense, which highlights the absence of anything like the Ninth Circuit's rule. And *United States* v. *Johnson*, 529 U. S. 53, rejected an effort to adorn the Act with a rule Congress did not enact, much as the Court does today.

The government's common-law argument—that courts historically held an escaped time on the run from prison does not count toward discharge of a sentence—may rest on sound premises but reaches an unsound conclusion. The government seeks not a rule that stops the clock or ensures a defendant takes no advantage of abscondment, but one that imposes new punishment by automatically extending supervised release. Unlike an escaped prisoner who is not serving his sentence, under the Ninth Circuit's rule, a defendant who fails to report remains bound by release terms and may be punished for violations. The Act already provides many ways to ensure defendants do not profit from violations without automatically extending the period beyond what a judge ordered. Pp. 7–11.

(c) The government's policy plea—that §3583(i)'s warrant-or-summons requirement may leave courts powerless when probation officers do not timely realize a defendant's absence—is misdirected. The proper place to register that complaint is with Congress, as this Court is not free to rewrite the directions Congress has provided. P. 11.

Reversed and remanded.

GORSUCH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, SOTOMAYOR, KAGAN, KAVANAUGH, BARRETT, and JACKSON, JJ., joined. ALITO, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

_____

No. 24–1056

_____

## ISABEL RICO, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 25, 2026]

JUSTICE GORSUCH delivered the opinion of the Court.

Today, most criminal defendants sentenced to federal prison must also serve a term of supervised release. If a defendant on supervised release fails to report to his probation officer, serious consequences can follow. This case poses a question about one of them.

I

Under the Sentencing Reform Act of 1984, supervised release serves as a transitional period between incarceration and freedom. See *Mont* v. *United States*, 587 U. S. 514, 523 (2019). While on supervised release, a criminal defendant must comply with various conditions. Some of those conditions (like: commit no more crimes) are as mandatory as they are obvious. 18 U. S. C. §3583(d). Others may be imposed at the discretion of the sentencing judge. *Ibid.* Common discretionary conditions include "'report[ing] to a probation officer as directed'" and "'notify[ing] the probation officer promptly of any change in address.'" Administrative Office of the United States Courts, Overview of Probation and Supervised Release Conditions 16, 24 (July 2024) (quoting §§3563(b)(15), (17)). Should a defendant violate any prescribed condition, whether mandatory or

discretionary, a judge may revoke his release and order him returned to prison. §3583(e)(3). A judge may also require the defendant to serve an additional "term of supervised release after [his] imprisonment." §3583(h).

Isabel Rico's encounter with these rules is long and complex. In 2010, she pleaded guilty to federal drug trafficking charges and was sentenced to seven years in prison followed by four years of supervised release. App. to Pet. for Cert. 11a (App.); Brief for Petitioner 8. Only a few months after leaving prison in January 2017, Ms. Rico violated her supervised release conditions. As a result, the judge revoked her release, sent her back to prison for two months, and ordered her to serve another 42-month term of supervised release. App. 11a. Per the judge's order, that new supervised release term was slated to expire in June 2021 (an important date, as we will soon see). See *ibid.*

Ms. Rico's second stint on supervised release went no better than her first. Shortly after leaving prison in December 2017, she changed her residence without telling her probation officer, once again violating a condition of her release. *Ibid.* In response, a judge issued a warrant for her arrest in May 2018. *Id.*, at 12a. But federal authorities apparently didn't catch up with her until January 2023. *Id.*, at 3a. In between, too, it turned out that Ms. Rico committed new state-law offenses. In January 2021, authorities arrested her for evading police and driving without a license. And in January 2022, she was charged with possessing illicit drugs for sale. Both sets of crimes resulted in convictions. Brief for Petitioner 9–10.

Of course, Ms. Rico faced punishment for those offenses in state court. But what did they mean for her back in federal court? Consulting the sentencing guidelines, the court held that Ms. Rico's failure to report to her probation officer and her January 2021 offenses qualified as two independent "Grade C violations" of her supervised release conditions, each carrying an advisory sentencing range of 8 to 14

months of imprisonment. App. 25a–32a. The court also held that Ms. Rico's January 2022 drug offense amounted to a "Grade A violation," with an associated advisory range of 33 to 36 months of imprisonment. *Ibid.* After considering these guidelines, and varying downward from them, the court sentenced Ms. Rico to another 16 months of incarceration, followed by two more years of supervised release. *Id.*, at 5a, 35a.

Ms. Rico appealed that decision. Perhaps the district court could revoke her supervised release based on her failure to report and her January 2021 offenses. Perhaps, as well, the district court could order her to serve 16 months in prison (after all, she committed two Grade C violations, each carrying an advisory sentence of 8 to 14 months) and a new term of supervised release. But, she insisted, the court had no lawful authority to treat her January 2022 state drug offense as an independent supervised release violation. The court could not do so, Ms. Rico argued, because that offense occurred *after* her pre-existing term of federal supervised release expired in June 2021.

The Ninth Circuit disagreed. Without question, Ms. Rico's supervised release term was set to expire in June 2021 by court order. But, the Ninth Circuit reasoned, Ms. Rico's abscondment "tolled" the clock so that her term continued to run until federal authorities caught up with her in 2023. *Id.*, at 3a. As a result, her January 2022 drug offense occurred while she was on supervised release. And because of that, the district court could treat that offense as a violation and revoke her supervised release based upon it. *Ibid.*

We agreed to review this case to resolve a circuit split. 606 U. S. 930 (2025). Some circuits, like the Ninth, hold that a defendant's failure to report doesn't just amount to a punishable supervised release violation but also automatically extends his term of supervised release. Others disagree, taking Ms. Rico's view that abscondment does not

automatically extend a term of supervised release.  Compare *United States* v. *Crane*, 979 F. 2d 687, 691 (CA9 1992); and *United States* v. *Buchanan*, 638 F. 3d 448, 458 (CA4 2011), with *United States* v. *Hernandez-Ferrer*, 599 F. 3d 63, 66–69 (CA1 2010); *United States* v. *Talley*, 83 F. 4th 1296, 1297 (CA11 2023).

## II

In approaching this dispute, a preliminary note on terminology is warranted.  The Ninth Circuit held that a defendant who absconds during supervised release "tolls" his existing, judicially ordered term of supervised release until federal authorities find him.  This is a misnomer.  In legal settings, the word "toll" often denotes some stop or pause.  See *Artis* v. *District of Columbia*, 583 U. S. 71, 80–82 (2018).  But under the Ninth Circuit's approach, a defendant who absconds stops or pauses nothing.  Rather, he remains subject to the conditions of his supervised release and can be held accountable for any violations he commits during his abscondment.  What the Ninth Circuit's rule really does is *extend* the period of supervised release beyond what a judge has ordered.  On its view, an absconding defendant's term of supervised release does not expire when a court has directed but continues to run so long as the defendant remains out of contact with his probation officer.

## A

Whatever the wisdom of a policy like that, we see nothing in the law authorizing it.  The Sentencing Reform Act provides courts with many tools to address defendants who fail to report or otherwise violate their supervised release conditions.  But automatically extending a term of supervised release is not among them.  An array of textual clues proves the point.

Start with what the Act says about when supervised release begins and ends.  The Act instructs that a term of

supervised release starts "the day the person is released from imprisonment." §3624(e). The Act then tells us when a term of supervised release must end, generally setting its maximum length at one, three, or five years, depending on the severity of the defendant's underlying offense. §3583(b). Neither provision hints at anything like the Ninth Circuit's automatic extension rule. To the contrary, that rule risks flouting the Act by permitting courts to extend supervised release beyond even the maximum terms set by Congress.

Next, consider how the Act treats absconders. As a condition of supervised release, a court may order a defendant to report to a probation officer and inform authorities if he changes his residence. See §§3563(b)(15), (17). Should a defendant violate those (or any other) conditions, a court may (and sometimes must) revoke his supervised release and send him back to prison with a new term of supervised release to follow. §§3583(e)(3), (g). That the Act authorizes those potent tools for addressing absconders—but makes no mention of anything like the Ninth Circuit's automatic extension rule—is telling too.

Relevant as well, the Act authorizes *other* extension and (true) tolling rules. Take a few examples. Section 3583(e)(2) permits a court to "extend a term of supervised release," but only subject to important limitations. A court must generally hold a hearing and consider various sentencing factors. See §3583(e)(2); Fed. Rule Crim. Proc. 32.1. A court cannot extend supervised release beyond the maximum term set by statute. See §3583(e)(2). Nor may a court extend a term of supervised release if that term has already expired. See *ibid.*; Brief for United States 8, 38, 45. The Ninth Circuit's automatic extension rule disregards not just one but each of these limits. Under its approach, no hearing is needed, a term of supervised release may extend beyond the statutory maximum, and a court-ordered expiration date becomes meaningless.

Section 3583(i) also addresses extensions. It provides that a court's power to revoke supervised release "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such violation." Here, then, the Act speaks directly to what a court may do after the expiration of a defendant's judicially ordered term of supervised release. But (again) the Act bounds a court's authority. A court may adjudicate only "matters arising before" the expiration of the defendant's term of supervised release. It may do so only if a warrant or summons issued during that term. And nothing in this provision allows a court to exceed statutory maximums. The Ninth Circuit's rule, meanwhile, blows past all those constraints, allowing courts to revoke supervised release for violations arising after the judicially decreed supervised release term expires—and sometimes even after the statutory maximum period—all without the necessity of a warrant or summons.

If more evidence were needed to illustrate how unlikely the Ninth Circuit's rule is, §3624(e) would supply it. That provision indicates that a "term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction" for 30 consecutive days or more. This is a true tolling rule, one that stops the clock running on a defendant's term of supervised release. Yet, like the Act's extension rules, it is narrow in scope and nothing at all like the rule the Ninth Circuit has adopted.

The quantity of all these instructions has a quality of its own, too. Cumulatively, the Act details how long supervised release may run, the tools courts can use to address defendants who fail to report or commit other violations, when courts may extend and toll terms of supervised release, and how they can go about addressing violations even after a term of supervised release has expired. To our eyes,

the absence of anything like the Ninth Circuit's rule in all these exacting instructions is striking and strongly suggestive that the Ninth Circuit's rule more nearly represents an adornment to Congress's work than a permissible interpretation of it.

B

Seeking to persuade us otherwise, the government starts this way. Under §3601, it observes, a defendant on supervised release "shall, during the term imposed, be supervised by a probation officer." Many other provisions speak similarly. See, *e.g.*, §§3603(2), (3), 3624(e). As a matter of ordinary meaning, the government submits, supervision "requires both observation and direction." Brief for United States 12. Because Ms. Rico was subject to neither of those things from early 2018 until 2023, the government reasons, she should receive no "credit" for serving on supervised release during that period. *Ibid.* And, as a result, the district court was within its rights to hold that she violated the terms of her supervised release when she committed her January 2022 drug offense. *Id.*, at 18–23.

If attractive at first blush, this line of reasoning suffers from a few underlying flaws. For one thing, the provisions the government cites do not outline anything like the Ninth Circuit's automatic extension rule. Instead, they merely describe the individual responsible for supervising the defendant—the probation officer—along with some of his duties. For another, to the extent these provisions speak about the length of supervised release at all, they indicate that a probation officer shall supervise a defendant only "during the term imposed" by the sentencing court. See §§3601, 3624(e). And that limitation would seem to do more to hurt than help the government's cause.

For another thing still, an anomaly lies at the heart of the government's theory. The government contends that Ms. Rico was not supervised from early 2018 until 2023 and,

accordingly, should not have that period counted toward her term of supervised release. But in the same breath, the government argues that her January 2021 state offenses and her January 2022 state drug offense count as federal violations because her term of supervised release continued to run during the entire length of her abscondment. In a very real sense, then, the government asks us to imagine that Ms. Rico was both off and on supervised release at the same time. Really, it is quite the puzzle.

If its arguments from statutory text fall short, the government replies, its arguments from precedent fill the gap. In particular, the government suggests, our decisions in *Mont* and *United States* v. *Johnson*, 529 U. S. 53 (2000), require us to adopt the Ninth Circuit's rule. But here, too, we just don't see it. *Mont* simply recognized that §3624(e)'s express terms suspend (or truly toll) a defendant's term of supervised release while he remains imprisoned for a separate state offense before trial. 587 U. S., at 521. And if that express tolling rule highlights anything, it is only, as we have seen, the absence of anything like the Ninth Circuit's rule in the statutory text. See Part II–A, *supra*.

*Johnson* is even further afield. There, the defendant remained in prison longer than he should have. 529 U. S., at 54. After realizing the mistake, the district court ordered the defendant's release and instructed that he should begin serving his term of supervised release. *Id.*, at 55. The defendant appealed a portion of that order, arguing that his term of supervised release should have started "when his lawful term of imprisonment expired." *Id.*, at 55–56. Ultimately, we rejected that argument, reasoning that the Act's terms could not sustain it. *Id.*, at 56–58. How any of that might require us to adopt the Ninth Circuit's rule escapes us. Perhaps *Johnson*'s only relevance to this case lies in this parallel to our case: We proceed today much as we did there, rejecting yet one more effort to adorn the Act with a rule Congress could have adopted but did not enact.

Moving past our precedents, the government next appeals to the common law.  For centuries, the government observes, common-law courts have held that the time between a defendant's escape from prison and his recapture generally does not count toward the discharge of his sentence.  It is a rule, the government notes, premised on the commonsense view that an escapee should take no "'manner of advantage from it.'"  Brief for United States 25 (quoting 2 W. Hawkins, Pleas of the Crown 200 (6th ed. 1788)).  And it is a rule, the government says, we should assume Congress meant to carry forward under the Sentencing Reform Act—and one that should ultimately lead us to adopt the Ninth Circuit's rule.  Brief for United States 29.

The government's premises here may be sound, but its conclusion is not.  Congress may sometimes legislate against the backdrop of the common law.  We can also assume for argument's sake that the government is right about the common-law rule and courts generally paused the clock on a defendant's sentence and its attendant conditions when he escaped from prison and remained at large.  But, as we have seen, the government seeks a very different rule here.  Its proposed rule does not stop any clock or merely ensure a defendant does not take advantage of his abscondment.  It imposes a new punishment on him by automatically extending his term of supervised release.

Look at it this way.  When a prisoner escapes, he is in no sense serving his prison sentence.  In contrast, when a defendant on supervised release fails to report, everyone agrees he remains bound by the terms of his release.  That is why, for failing to report and any other violation he may commit during his judicially ordered term of supervised release, a court may send a defendant to prison and authorize more supervised release yet.  §3583(e)(3).  The court can do all that, too, even after the defendant's prescribed term of supervised release expires, so long as a warrant or summons issues beforehand.  §3583(i).  The Act thus already

provides courts with many ways to ensure a defendant does not profit from a supervised release violation. But what the Act does not do is automatically extend the defendant's period of supervised release beyond what a judge has ordered. And that additional rule is hardly necessary to ensure that a defendant should take "no manner of advantage" from his abscondment.

The government urges us to consider *Anderson* v. *Corall*, 263 U. S. 193 (1923). That case, the government insists, illustrates how background common-law principles should inform our understanding of the Act. In *Corall*, a federal court sentenced the defendant to prison, followed by a term of parole, a form of conditional release different from (but not wholly unlike) supervised release. *Id.*, at 193–194. While the defendant was on parole, he committed a new state crime and was sentenced to state prison. *Id.*, at 194. After his release, federal authorities revoked the defendant's parole and returned him to federal prison. *Id.*, at 194–195. The defendant protested that his federal parole clock had expired while he was in state prison, but we disagreed. Instead, applying background common-law principles, we held that the defendant's state confinement stopped the clock on his federal parole much as a prisoner's escape stops the clock on his prison sentence. *Id.*, at 196–197.

We fail to see how any of this moves the needle. *Corall* might teach that, thanks to background common-law principles, a defendant's federal parole clock stops running during his time in state prison. But what does that prove? When it comes to supervised release, as we have seen, Congress has already codified a similar rule, providing that a defendant's incarceration for 30 days or more pauses his term of supervised release. §3624(e). And none of that means the government is entitled to an additional and very different rule that would automatically extend a defendant's term of supervised release beyond what a court has ordered and possibly even beyond the statutory maximum.

Simply put, *Corall* did not even contemplate, let alone endorse, anything like the Ninth Circuit's rule.

In the end, the government is left to resort to a policy plea. The Act may supply courts with many tools to address absconding defendants. A court may even revoke a defendant's supervised release after his judicially ordered term of supervised release has expired so long as a warrant or summons issues before the term ends. See §3583(i). But in cases where a defendant absconds late in his supervised release term, the government protests, a probation officer may not realize his absence in time to secure a warrant or summons, leaving a court powerless to address violations after the term expires. It's a problem, the government insists, we should remedy by endorsing the Ninth Circuit's rule.

This plea is misdirected. If the government thinks §3583(i)'s warrant-or-summons requirement too demanding, the proper place to register that complaint is with those who drafted it. This Court is not free to rewrite the directions Congress has provided. Nor is it clear to us, for that matter, how serious the government's supposed problem is. Defendants may commit many violations late in their terms of supervised release. Some of those violations, like secretive or nascent criminal activities, may be difficult to detect. By comparison, a defendant's failure to report to a probation officer as instructed is presumably among the easiest violations for federal authorities to notice. So even if we had the authority to rewrite the law's terms to address "late-in-term-and-difficult-to-detect-violations," it is not clear why we would start with failure to report violations.*

––––––––––––

*The dissent maintains that, even if Ms. Rico's January 2022 offense did not qualify as an independent supervised release violation, the district court could have considered that offense under the Sentencing Reform Act when fashioning an appropriate sentence for the violations she committed before June 2021. See *post*, at 1–4 (opinion of ALITO, J.). But that, of course, is not what happened. Instead, the district court treated

*

Because the Sentencing Reform Act does not authorize the rule the Court of Appeals adopted and the government advances, the judgment of the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

—————

Ms. Rico's January 2022 offense as an independent supervised release violation. And the Ninth Circuit affirmed that decision based on its "tolling" rule. As we have explored (and the dissent hardly contests), those decisions are inconsistent with the Act's terms. At bottom, then, and despite its insistence otherwise, *post*, at 4, n. 2, the dissent believes those errors are harmless because, it says, the district court could have accounted for Ms. Rico's January 2022 offense by a different means than the one it employed. We think it inappropriate to engage in that kind of speculation. The Ninth Circuit decision under review never addressed the question of harmless error. Nor does the government press a harmless-error argument before us. In these circumstances, it is "normal practice" to leave any question about harmless error for resolution on remand "in the first instance." *Neder* v. *United States*, 527 U. S. 1, 25 (1999). No sound reason exists to deviate from that practice here.

# SUPREME COURT OF THE UNITED STATES

_____

No. 24–1056

_____

## ISABEL RICO, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 25, 2026]

JUSTICE ALITO, dissenting.

This case is much simpler than the Court's opinion suggests, and we have no need to consider whether petitioner's term of supervised release was "tolled" when she absconded and evaded supervision.

## I

I will start with what is undisputed. In December 2017, petitioner began a 42-month term of supervised release and, during that time, was required not to use illegal drugs or commit any other crimes and was ordered to notify her probation officer if her address changed. In May 2018, she moved without telling her probation officer, and a warrant was issued for her arrest. She remained a fugitive until January 2023, but during the intervening months, she committed three state-law criminal offenses, including a drug crime in January 2022. The sentencing judge, exercising his authority under 18 U. S. C. §§3583(e)(3) and (h), revoked petitioner's term of supervised release, sent her back to prison for 16 months, and required her to serve a new 2-year term of supervised release after her release from confinement.

In determining the length of petitioner's new term of imprisonment, the judge turned first to the Sentencing Guidelines. Without the January 2022 drug offense, the sentencing range recommended by the Guidelines was 8 to 14

months, but with the drug offense the range jumped to 33 to 36 months. The judge started with the higher range, but he made a large downward "variance" and set her sentence at 16 months, just 2 months longer than the top of the range that would have applied if the drug offense were disregarded.

## II

The question before us is whether the sentencing judge's consideration of the drug offense was lawful, and based on the terms of the Sentencing Reform Act of 1984, it clearly was. Under 18 U. S. C. §3583(e), the judge was permitted to take into account most of the factors set out in §3553(a), and several of those factors permitted consideration of the January 2022 drug crime. For example, imprisoning petitioner for 16 months could deter her from committing criminal offenses, including drug crimes, during and after her new 2-year term of supervised release. See §3553(a)(2)(B). The 16-month term could also deter others from violating supervised release and committing serious crimes. See *ibid.* And by confining petitioner for 16 months, the sentence protected the public from crimes that petitioner, a serial recidivist, might have committed if she were not in prison. See §3553(a)(2)(C).[1]

Although the Sentencing Reform Act plainly authorized the sentencing judge to consider the January 2022 drug offense, petitioner challenges her sentence based on her interpretation of the Sentencing Guidelines. That argument should be rejected for at least two reasons. First, the Sentencing Commission cannot take away important authority that the Sentencing Reform Act unequivocally gives to

---

[1] Even petitioner concedes that the "supervisee's conduct *after* the expiration of the term can still be considered by the sentencing court as part of the relevant 18 U. S. C. §3553(a) analysis when selecting the appropriate revocation sentence." Brief for Petitioner 46 (emphasis in original).

district courts. Second, the Sentencing Guidelines, properly read, do not prevent a judge from considering all crimes that a prisoner commits after absconding from supervised release.

Petitioner's contrary argument rests on what she understands to be the combined operation of several provisions of the Sentencing Guidelines. At the time of her sentencing, §7B1.1 set out several grades of supervised released violations, ranging from Grade A for the worst transgressions (including drug felonies) to Grade C for the least serious. United States Sentencing Commission, Guidelines Manual §7B1.1 (Nov. 2023). Section 7B1.4(a) provided recommended ranges of imprisonment for each violation grade.

Petitioner contends that a supervised release violation is one that occurs while a prisoner is on supervised release and that she was no longer on supervised release when she committed the drug crime in January 2022 because her term of supervised release continued to run while she was a fugitive and thus expired in 2021. As a result, she maintains, the drug offense should not have been considered in calculating the sentence recommended by the Guidelines.

I am bemused by the notion that petitioner was on supervised release when she was evading all supervision. (I suppose she was on "unsupervised supervised release.") And it seems strange to regard a crime committed after the expiration of "unsupervised supervised release" as a non-event. By that logic, if petitioner had gone on a murder spree after the expiration of the period of unsupervised supervised release, the sentencing judge would have been required to put that out of his mind.

As I see it, however, the whole debate about whether petitioner's term of supervised release continued to run or was "tolled" while she was on the lam is pointless. The Guidelines are merely advisory, and this Court has made it clear that a judge is allowed to impose a sentence outside the recommended Guidelines range when that range "fails

properly to reflect §3553(a) considerations." *Rita* v. *United States*, 551 U. S. 338, 351 (2007).

That is what the judge did here, and it makes no difference that he started with the 33-to-36-month range and then varied downward to 16 months instead of starting with the lower range of 8 to 14 months and varying upward by 2 months based on the drug crime. Not only was this permitted by the Guidelines, but the judge stated that Rico's sentence was imposed "regardless of the applicable sentencing guideline range." App. to Pet. for Cert. 35a. By taking petitioner's January 2022 drug crime into account in this way, the judge acted in conformity with the Sentencing Reform Act, the Sentencing Guidelines, and the authority that this Court recognized in *Rita*.[2]

I would therefore affirm.

---

[2] Contrary to the Court's argument, see *ante*, at 11, n., I do not contend that we should affirm based on harmless error. Rather, the District Judge made no error at all.